MORGAN v. ANDREWS.[1]

1. LIBEL—WORDS ACTIONABLE PER SE.
    A letter stating that a designated person is "a liar and dead
    beat of the first order, and I would like to sue him to get what
    he owes me," is libelous *per se.*

2. MALICIOUS INTERFERENCE WITH CONTRACT.
    Plaintiff entered into a contract to design and construct a
    machine which should produce certain results, but which the
    purchaser should have the right to reject if not satisfactory to
    him.   A corporation was thereafter organized to continue the
    business of the purchaser, and defendant became a stockholder
    therein and manager of the business.   Maliciously, and by
    falsehood and deceit, defendant induced the purchaser to
    reject the machine, which he would otherwise have accepted.
    *Held,* that defendant was liable for the resulting damage to
    plaintiff.

Error to Washtenaw; Kinne, J.   Submitted October
10, 1895.   Decided November 5, 1895.

Case by Benjamin B. Morgan against Fred C. Andrews
for libel, and for malicious interference with a contract
between plaintiff and third persons.   From a judgment
for plaintiff, defendant brings error.   Affirmed.

*J. Willard Babbitt (A. J. Sawyer,* of counsel), for appel-
lant.

*Maybury & Lucking,* for appellee.

LONG, J.   December 28, 1887, plaintiff entered into a
written contract with Henry P. Glover and Enoch C.
Bowling to construct a dress-stay machine.   Payments
were to be made from time to time as the work progressed,
until $1,200 was paid, and payments were to be made up
to $2,000 when the machine was completed and a satisfac-

---

[1] Rehearing denied December 24, 1895.
    107 MICH.—3

tory test made. It was also provided that further payments were to be made up to $20,000 out of moneys earned by the machine. The contract contained a stipulation that the machine must be satisfactorily completed. Plaintiff, claiming that the machine was completed, brought suit in the Wayne circuit court against Glover & Bowling for the price. He was defeated in that action, and no appeal was taken. The court held, in that case, that the test must be satisfactory to Glover & Bowling.

During the progress of that trial, the plaintiff claims that the defendant in the present case wrote Judge Hosmer, before whom the trial was then being had, the following letter:

"ANN ARBOR, MICH., 11—17—'92.
"*Judge Hosmer:* If you wish to know what kind of a man Morgan, of Ann Arbor, is, I can tell you. He is a liar and dead beat of the first order, and I would like to sue him to get what he owes me.
"Respectfully,
"GEORGE DUNN."

The declaration in the present case contains several counts. The second and third counts are for libel, and the above letter is set out as the article relied upon. The third count sets out the making of the contract with Glover & Bowling, the completion of the machine, the delivery of it to Glover & Bowling, their refusal to pay for it, the suit in the Wayne circuit court, and the letter claimed to have been written by defendant, Andrews. In this count it is alleged that the defendant had been interested in the business with Glover & Bowling, and was interested in the outcome of the suit, and took an active part in the trial, both as a witness and in furnishing evidence to the defendants.

The fourth count sets out, substantially, that plaintiff was a mechanic, machinist, and inventor, and that Glover & Bowling were making dress stays by hand at Ypsilanti when the contract was made between the parties for the

manufacture of the machine. It sets out the contract in full, and then avers that—

" Plaintiff entered upon the designing and constructing of such a machine as is described in and called for by said contract, and worked upon the same by and with the consent of the said Glover & Bowling until, to wit, on or about the 1st day of January, 1890, when he had completed the said machine, ready for the final test and acceptance by said Glover & Bowling, under said contract; and said machine was equal in all respects to the requirements of the said contract, and ought to have been accepted by the said Glover & Bowling; and plaintiff had expended upon said machine, in the construction thereof, in labor and materials, upwards of $4,600, a portion of the same, to wit, $1,200, being the means of said Glover & Bowling, and the remainder of the same being the means of the plaintiff. And the said defendant was connected, in some way unknown to the plaintiff, in business with the said Glover & Bowling during most of the time of the building of said machine, and during all of the latter part of the time, to wit, from the 1st day of January, 1889, and thereafter, and particularly during all the time of the trial tests of said machine and of the different parts thereof, which were made at the factory of the said Glover & Bowling, where also the said defendant was engaged as superintendent or manager. And plaintiff further avers that said defendant, with intent to injure the plaintiff, and falsely, wrongfully, wickedly, and maliciously, did, by taking advantage of his said position aforesaid, by subtle devices, falsehood, deceit, and fraud, cause and procure the said Glover & Bowling to refuse to accept the said machine, and to refuse to pronounce the test thereof satisfactory, and, by means of such fraud and falsehood, caused and procured said Glover & Bowling to reject said machine; whereas in truth and in fact the said machine would and did manufacture one thousand gross and upwards of said dress stays, per day of ten hours, pinked, and equal, as a finished product, to the handmade stays of the said Glover & Bowling, as made at the time said contract was entered into, and in all respects said machine was equal and superior to the machine contracted for in said contract, and the same ought to have been accepted as satisfactory by the said Glover & Bowling, and they would have so

accepted the same, and paid the plaintiff therefor, according to the terms of the contract, but for the false, fraudulent, and malicious conduct and machinations and devices of the defendant as aforesaid. And by means of such wrongs and injuries, falsehood and malice, of the defendant as aforesaid, plaintiff was deprived, not only of the profits of said contract, but wholly lost all that he had expended upon the construction of the said machine as aforesaid."

The proofs tended to show that the plaintiff expended a large amount of money in the construction of said machine, about $3,000 of his own money; that he was about two years at work upon it, and completed it about December 1, 1889; that Glover & Bowling put off payment until March 1, 1890, when they finally rejected it; that, while the machine was in process of construction, a change took place in the business of Glover & Bowling, by which they added a feature to the dress stays which the machine was not designed or calculated to make,— that is, a metal tip was put at each end of the steel forming the basis of the stay. This was called "tipping." The tipped article very soon displaced the untipped in the market, largely, and the result was that the machine became less desirable. While this was being developed, a change took place in the business of Glover & Bowling, by which Bowling retired from the management, and, in October, 1889, a corporation was formed, and defendant, who before that had been bookkeeper for Glover & Bowling, became a stockholder in the corporation to the amount of $10,000, and manager of the concern. He was the son-in-law of Bowling, and plaintiff claims that the testimony tends to show that, during the latter part of his work on the machine, the defendant set out systematically and maliciously to cause Glover & Bowling to reject the machine, and that, by defendant, Andrews', malicious conduct and influence and fraud and deceit, he caused Glover & Bowling to reject it. The corporation, it is claimed, had no direct interest in the machine, and that no contract relations existed between the plain-

tiff and it. On the other hand, the defendant contends
that there is no evidence whatever, in the record here,
that he maliciously, and with falsehood and deceit,
caused Glover & Bowling to reject the machine.

There is no evidence that Glover & Bowling ever
accepted the machine, nor is there any direct evidence
that they would have accepted it but for the deceit and
fraud of defendant, Andrews. Fraud is seldom shown
by direct proof, but by facts and circumstances taken
together, and the inferences to be drawn therefrom.
*Ross* v. *Miner*, 67 Mich. 412. The rule is that fraud may
be proved, the same as any other fact, by facts and cir-
cumstances which satisfy the mind; and it is a question
for the jury when there is any evidence to warrant the
finding. *Freedman* v. *Campfield*, 92 Mich. 118. The defend-
ant admits that he advised Glover & Bowling against
the machine. Many times, when plaintiff desired goods
for the purpose of testing the machine, he refused to
furnish them, though he had been directed by Glover &
Bowling to furnish them. According to some of the wit-
nesses, he constantly put obstacles in the way of the
plaintiff, in his work on the machine and in testing it.
Glover & Bowling would apparently be pleased with the
tests made, and, after a few moments' conversation with
Andrews, the latter would almost immediately there-
after come to plaintiff, and say: "You need not do any-
thing further with this. There is a question about it.
You better let them alone." It would not profit the par-
ties or the profession to set out at length the many facts
and circumstances detailed in the record, showing the
conduct of the defendant towards the plaintiff and the
machine. If the testimony be true, he was in the habit
of speaking of and to the plaintiff in the most slighting
terms, constantly disparaging the machine and its work,
when the tests were being made to induce Glover & Bow-
ling to accept it. There is little doubt, from the testi-
mony, that Glover & Bowling should have accepted it;
but, under the contract, as held in the trial of the case

against Glover & Bowling, they had the right to reject it without giving any reason therefor. In the present case, the only theory upon which the plaintiff had a right to recover was that they would have accepted it but for the fraud and deceit of the defendant. We think there is evidence in the case from which the jury might infer that it was due to the misconduct of the defendant that the machine was not accepted. There was also some evidence that the letter set out in the record was written by the defendant.

The court directed the jury, upon each of these counts, as follows:

"There are two counts or causes of action in the declaration in this case, and the plaintiff may recover upon one or both counts, or upon neither of them, as you may find the facts of the case under the evidence submitted to you. * * * Now, if you find from the evidence that the defendant wrote this letter, then the plaintiff is entitled to recover in this action both actual and what is known as 'exemplary' damages. The letter is libelous *per se*, and, if you find from the evidence that it was written by the defendant, you will award to the plaintiff such damages as, in your judgment, will fully compensate him for the wrong inflicted by the defendant. * * *

"As to the second count, if you find from the evidence that the defendant maliciously and without good cause persuaded Mr. Glover to reject the machine, and that Mr. Glover would have accepted the machine but for such malicious inducements on the part of the defendant, then the plaintiff is entitled to recover in this action for the damage done him thereby. * * * If the machine was rejected by Mr. Glover and Mr. Bowling, or by Mr. Glover acting for them both, because in their opinion, or in his opinion, it did not correspond to the undertaking in that contract, or if they, or either of them, rejected it for any cause whatever, other than the influence of the defendant, then, on this branch of the case, your verdict must be for the defendant."

This charge very fairly states the law applicable to such cases.

The case of *Chipley* v. *Atkinson*, 23 Fla. 206, is directly in point. The plaintiff there was a superintendent in a

brick manufactory, and alleged that his discharge was procured by the malicious interference of the defendant. It was held that, although no action lay against the employer for his discharge, yet plaintiff might recover against a third person who had maliciously procured his discharge. It was said by the court:

"Merely to persuade a person to break his contract may not be wrongful in law or fact; still, if the persuasion be used for the indirect purpose of injuring the plaintiff, or benefiting the defendant at the expense of the plaintiff, it is a malicious act, which, in law and in fact, is a wrongful act, and therefore an actionable act, if injury issues from it."

See, also, *Rice* v. *Manley*, 66 N. Y. 82; *Benton* v. *Pratt*, 2 Wend. 385. In *Rice* v. *Manley*, one Stebbins agreed verbally to sell to Rice a large quantity of cheese. The contract was not enforceable, because within the statute of frauds. Manley induced Stebbins to believe that Rice did not want the cheese, and himself purchased it from Stebbins, who would otherwise have delivered it to Rice, as agreed. It was held that Manley was liable in damages to Rice for his fraudulent interference with the contract, notwithstanding Stebbins was not in any wise liable to Rice. So, in *Benton* v. *Pratt*, the contract was void under the statute of frauds; yet the court held that a recovery could be had against a third person who maliciously interfered with the contract for his own gain or profit. Of course, this rule would not prevail where the party sought to be charged in damages was acting in the lawful exercise of some distinct right, for the *quo animo* constitutes a large part of the gist of the action; but here the declaration charges both malice and fraud, and, as expressed by Pollock in his work on Torts (p. 452), "there must be a wrongful intent to do harm to the plaintiff before the right of action for procuring a breach of contract can be established."

Counsel argue, however, that the defendant stands on the same footing with Glover & Bowling, because he was

interested in the corporation, and was manager, and had an interest in the machine. There was no contract relation between plaintiff and the defendant. By the terms of the contract, it was the right of Glover & Bowling to reject the machine if not satisfactory; but defendant had no right to reject, or to unlawfully and maliciously interfere with the acceptance of it by Glover & Bowling. The fact that defendant, Andrews, had an interest in the business as a stockholder would give him the undoubted right to express his opinion freely about the machine; but this action is framed upon his malicious and willful fraud and deceit in inducing the rejection. It was upon these lines that the court below let the case go to the jury, as the court charged that defendant had the right to express freely his convictions about the machine, and could be held liable only on the theory that, without good cause, and actuated by ill will and malice towards plaintiff, he sought to injure him by inducing Glover & Bowling to reject the machine.

It is also contended that the court erred in the admission of evidence on the part of the plaintiff. We think not. The testimony referred to was proper, as showing the attitude of Glover & Bowling towards the machine before the defendant had interfered, and the court limited the inquiry to that. We think the case was fairly tried, and submitted to the jury under a charge which fully protected the rights of the defendant.

Judgment must be affirmed.

McGrath, C. J., Montgomery and Hooker, JJ., concurred. Grant, J., did not sit.