## TASH v HOUSTON

### Opinion of the Court

1. JUDGMENT—SUMMARY JUDGMENT—SUFFICIENCY OF COMPLAINT—PLEADING—COURT RULES.

The legal sufficiency of a complaint is challenged when summary judgment is sought on the grounds that plaintiff has failed to state a claim upon which relief can be granted; all well-pleaded allegations must be taken as true and the pleadings alone should be considered (GCR 1963, 117.2[1]).

2. CONTRACTS—INTERFERENCE—TERMINATION—ACTIONS.

Interference with employment or other contracts terminable at will is actionable, since until it is terminated the contract is a subsisting relationship, of value to the plaintiff and presumably to continue in effect.

3. PRINCIPAL AND AGENT—EMPLOYMENT RELATIONSHIPS—EXERCISE OF JUDGMENT—LABOR UNIONS.

A local union president can both create and terminate employment relationships for the local and the freedom of a union employer to exercise its judgment is in fact the president's freedom to exercise his judgment because the local must, of necessity, act through its agents; however, the president is not protected by any privilege for acts he performs in his own interest rather than his principal's interests.

4. CONTRACTS—CORPORATE CONTRACTS—CONTRACT INTERFERENCE—CORPORATIONS—UNIONS—PRIVILEGE—PERSONAL MOTIVES.

Contract interference by a corporate director is privileged only when he acts in good faith and believes his actions will benefit

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Summary Judgment §§ 17, 26 *et seq.*

[2] 45 Am Jur 2d, Interference §§ 1, 3 *et seq.*

[3–5] 3 Am Jur 2d, Agency § 84.

48 Am Jur 2d, Labor and Labor Relations §§ 324–326, 355.

[5] 48 Am Jur 2d, Labor and Labor Unions § 22.

[6] 53 Am Jur 2d, Master and Servant §§ 34, 43.

the corporation; a president of a union local, as a union official, should have no greater privilege to interfere with the contractual relations of the union than that accorded corporate officials with regard to corporate contracts, since both have a duty to advance the interests of the organizations they represent.

5. Master and Servant—Employment Relationships—Unions—Sex—Legitimate Interests—Summary Judgment.

Summary judgment for a local union president is improper where plaintiff employee alleges that defendant president tortiously interfered with her contract of employment when he discharged her because she spurned his sexual advances and he claims plaintiff's poor work led to her discharge; plaintiff's complaint sets forth an unprivileged interference with plaintiff's employment relationship with the union.

Dissent by Beasley, J.

6. Master and Servant—Employment Relationships—Torts—Contracts—Contract Interference—Breach of Contract—Damages.

*The tort of inducing breach of contract, or interfering with a contract, was never intended and does not apply to the relationship between employer and employee; the employer breaches the contract, he does not induce a breach or interfere with the contract, and he is liable in damages for breach of contract, not for the tort of inducing a breach of or interfering with the employment contract.*

Appeal from Genesee, Thomas C. Yeotis, J. Submitted October 5, 1976, at Lansing. (Docket No. 27547.) Decided March 30, 1977. Leave to appeal applied for.

Complaint by Dorothy M. Tash against Kenneth Houston for tortious interference with her contract of employment. Summary judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Donald E. Smith,* for plaintiff.

*MacDonald, Fitzgerald & MacDonald,* for defendant.

Before: M. F. CAVANAGH, P. J., and R. M. MAHER and BEASLEY, JJ.

R. M. MAHER, J. Plaintiff appeals from an order granting defendant's motion for summary judgment. We reverse.

Plaintiff's complaint alleged that she was an employee of Local 326 of the UAW from October 15, 1971 until January 3, 1972. She worked under the supervision of defendant, the president of the local. The complaint alleged that defendant discharged her as an employee on January 3, 1972, because she spurned his sexual advances. Plaintiff contends that her discharge was a tortious interference with her contract of employment for which defendant should be held liable.

Defendant's answer denied that he had proposed sexual relations with plaintiff and asserted that plaintiff's poor work led to her discharge. Defendant then moved for summary judgment under GCR 1963, 117.2(1), for plaintiff's failure to state a claim upon which relief can be granted.

When summary judgment is sought on the grounds that plaintiff has failed to state a claim upon which relief can be granted, the legal sufficiency of the complaint is challenged. *Borman's v Lake State Development Co,* 60 Mich App 175; 230 NW2d 363 (1975). All well-pleaded allegations must be taken as true, and the pleadings alone should be considered. *Wynn v Cole,* 68 Mich App 706; 243 NW2d 923 (1976). Defendant submitted an affidavit with his motion under GCR 1963, 117.2(1), and in ruling for defendant the trial court accepted as true the statement in the affidavit that one of defendant's functions as president of the local is the hiring and firing of secretaries. Utilization of this statement about defendant's role in

personnel decisions was error. Nevertheless, since plaintiff has not argued that the statement was not true or that the court should not have used it, but instead argues that it does not deprive her claim of legal validity, we choose not to reverse the order on this ground. To do so would be unnecessary, for we agree with plaintiff that, even if defendant was authorized to hire and fire employees of the local, her complaint stated a claim upon which relief could be granted.

Plaintiff's complaint did not allege that her employment was for any specified term. It can therefore be assumed that the employment relationship was terminable at will by either plaintiff or the local. Although there is some authority for holding that there can be no liability for interference with at will employment, see 1 Harper & James, The Law of Torts, § 6.7, p 494, the majority position is to the contrary. Prosser states:

"[T]he overwhelming majority of the cases have held that interference with employments or other contracts terminable at will is actionable, since until it is terminated the contract is a subsisting relationship, of value to the plaintiff, and presumably to continue in effect." Prosser, Law of Torts (4th ed) § 129, pp 932–933.

An analogous question was presented in *Truax v Raich,* 239 US 33; 36 S Ct 7; 60 L Ed 131 (1915), in which Raich, an at will employee of Truax, challenged an Arizona statute which limited the employment of persons who were neither "native born citizens" of the United States nor qualified electors. In answer to the assertion that Raich had no property interest at stake, because he was an at will employee, Justice Hughes wrote:

"It is said that the bill does not show an employment

for a term, and that under an employment at will the complainant could be discharged at any time, for any reason or for no reason, the motive of the employer being immaterial. The conclusion, however, that is sought to be drawn, is too broad. The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others. The employee has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion and, by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will." 239 US at 38; 36 S Ct at 9; 60 L Ed at 134.

This quotation from *Raich v Truax* supports the proposition that an at will employee has a significant interest in his continued employment that will be protected against illegal interference by third persons. It also points out the most difficult obstacle facing plaintiff as she attempts to convince this Court that she has stated a cause of action against defendant. The employment relationship between plaintiff and the local was terminated by defendant, but as president of the local it is one of defendant's functions to both create and terminate employment relationships. The "freedom of the employer to exercise his judgment" is, in fact, defendant's freedom to exercise his judgment to determine whether the local's interests are served by continuation or termination of plaintiff's employment. The local must, of necessity, act through its agents. However, defendant, as the local's agent, is not protected by any privilege for acts he performs in his own interest rather than for his principal's interests. See Restatement of Agency (2d), §§ 343, 345, comment b, and § 346, comment b.

*Morgan v Andrews,* 107 Mich 33; 64 NW 869 (1895), the first Michigan case to recognize the tort

of contract interference, discussed an analogous situation. Plaintiff Morgan, an inventor, had a contract with a corporation for construction of a machine to make dress stays. The contract gave the corporation the right to reject the machine should it be considered unsatisfactory. When the corporation rejected the machine, Morgan brought suit against defendant Andrews, a stockholder in the corporation and its manager. The Court rejected Andrews' argument that his relationship with the corporation precluded any liability for his interference with the corporation's contracts. Justice LONG wrote:

"Counsel argue, however, that the defendant stands on the same footing with Glover & Bowling, because he was interested in the corporation, and was manager, and had an interest in the machine. There was no contract relation between plaintiff and the defendant. By the terms of the contract, it was the right of Glover & Bowling to reject the machine if not satisfactory; but defendant had no right to reject, or to unlawfully and maliciously interfere with the acceptance of it by Glover & Bowling. The fact that defendant, Andrews, had an interest in the business as a stockholder would give him the undoubted right to express his opinion freely about the machine; but this action is framed upon his malicious and willful fraud and deceit in inducing the rejection. It was upon these lines that the court below let the case go to the jury, as the court charged that defendant had the right to express freely his convictions about the machine, and could be held liable only on the theory that, *without good cause, and actuated by ill will and malice towards plaintiff*, he sought to injure him by inducing Glover & Bowling to reject the machine." 107 Mich at 39–40. (Emphasis supplied.)

This 19th century case may be the only reported Michigan decision to consider a corporate official's liability for interference with corporate contracts.

More recent decisions from other jurisdictions indicate that the Court's position in *Morgan v Andrews* remains good law.

Many cases begin their analysis by citing the English case, *Said v Butt,* 3 KB 497 (1920). In dictum, Judge McCardie of the English court offered this observation:

"But the servant who causes a breach of his master's contract with a third person seems to stand in a wholly different position. He is not a stranger. He is the alter ego of his master. His acts are in law the acts of his employer. In such a case it is the master himself, by his agent, breaking the contract he has made, and in my view an action against the agent under the *Lumley v Gye* principle must therefore fail, just as it would fail if brought against the master himself for wrongfully procuring a breach of his own contract * * * .[1]

"I hold that if a servant acting bona fide within the scope of his authority procures or causes the breach of a contract between his employer and a third person, he does not thereby become liable to an action of tort at the suit of the person whose contract has thereby been broken." 3 KB at 505–506.

The privilege of corporate officials to interfere with the corporation's contracts is sometimes viewed as absolute, see, *e.g., Greyhound Corp v Commercial Casualty Insurance Co,* 259 App Div 317; 19 NYS2d 239 (1940), but most often courts follow *Said v Butt* and recognize a limitation of "good faith" in their application of the corporate official's privilege, as did Michigan's Supreme Court in *Morgan v Andrews, supra. E.g., Buckley v 112 Central Park South, Inc,* 285 App Div 331; 136 NYS2d 233 (1954), *Mendelson v Blatz Brewing Co,* 9 Wis 2d 487; 101 NW2d 805 (1960), *Ong Hing v*

---

[1] *Lumley v Gye,* 2 El & Bl 216, 118 Eng Rep 749 (1853), is the leading modern case on tortious interference with contract.

*Arizona Harness Raceway, Inc,* 10 Ariz App 380; 459 P2d 107 (1969), *Wampler v Palmerton,* 250 Ore 65; 439 P2d 601 (1968). After stating that contract interference by a corporate director is privileged when he acts in good faith and believes his actions will benefit the corporation, the Arizona court in *Ong Hing v Arizona Harness Raceway, Inc, supra,* wrote:

"The question of good faith and whether the director believed the act was for the best lawful interests of the corporation must be determined as of the time the inducement took place. To determine these questions it is proper for the trier of facts to ascertain whether the accused director acted to satisfy personal feelings against the third party, or to serve his own private interest with no benefit to the corporation." 10 Ariz App at 388; 459 P2d at 115.

The Oregon Supreme Court, considering "good faith" in *Wampler v Palmerton, supra,* concluded:

"We do not believe that 'good faith' as used here can reasonably mean anything more than an intent to benefit the corporation." 250 Ore at 76; 439 P2d at 607.

Other cases dealing with this question apply the same standard even when the phrase "good faith" is not used. The privilege exists when the corporate official is "acting for and on behalf of his corporation", *May v Sante Fe Trail Transportation Co,* 189 Kan 419, 425; 370 P2d 390, 395 (1962), when he is "actuated * * * by a sense of duty to the corporation", *Vassardakis v Parish,* 36 F Supp 1002, 1005 (SD NY, 1941), or when he acts "in the belief that he is serving the interest of the corporation". *Tye v Finkelstein,* 160 F Supp 666, 668 (D Mass, 1958). See also, 3 Fletcher, Corporations, § 1001, p 540.

We think defendant here, as a union official, should have no greater privilege to interfere with the contractual relations of the union than that accorded corporate officials with regard to corporate contracts. Both have a duty to advance the interests of the organizations they represent, but the need for vigorous representation should not excuse acts done for a strictly personal motive. The privilege a union official has to interfere with the union's contracts depends upon the official acting with an honest belief that his action will benefit the union.

If plaintiff's allegations are true, and we note that so far she has proved nothing, then she has suffered a wrong the law should remedy. The sexual desires of an official simply cannot be equated with the legitimate interests of the organization he represents. Plaintiff's complaint sets forth an unprivileged interference by defendant with plaintiff's employment relationship with the union. The grant of summary judgment for defendant, on the basis of privilege, was improper. Plaintiff should have the opportunity to prove her allegations below. Defendant, of course, will have the opportunity to show that he acted in good faith, *i.e.,* intending to benefit the union. He must only show that as the principal officer of the union he discharged plaintiff, not because, as she alleges, she spurned his sexual advances, but, instead, because he believed that the union would benefit by not having her as its employee.

Reversed and remanded.

M. F. Cavanagh, P. J., concurred.

Beasley, J. *(dissenting).* I dissent.

The tort of inducing breach of contract, or inter-

fering with a contract, was never intended and
does not apply to the relationship between em-
ployer and employee.

An employee has a veritable arsenal of remedies
against his employer. Among other things, an
employee has the benefit of the workmen's com-
pensation laws, fair employment practices legisla-
tion, unemployment compensation laws, collective
bargaining agreements and the general law afford-
ing damages for breach of contract, all of which
bear in various ways on hiring and firing.[1] An
employee does not have a right to sue his em-
ployer for damages under the doctrine that his
employer interfered with his employment contract;
that tort remedy is not available to an employee.
The employer breaches the contract; he does not
induce a breach or interfere with the contract. The
employer is liable in damages for breach of con-
tract, *not* the tort of inducing a breach of or
interfering with the employment contract.

In this case, defendant was the president of the
local union. In that capacity he was entrusted with
responsibility for hiring and firing employees of
the union. Under Michigan law this union is a
voluntary, unincorporated association. In discharg-
ing plaintiff, defendant exercised the power of
supervision entrusted to him by the union as an
employer. Whether he discharged her for an im-
proper reason, namely, denial of sexual relations,
does not alter the fact that defendant was acting
for the employer of both plaintiff and defendant.
In so doing, he is not liable for damages for

---

[1] For example, under the workmen's compensation statute, plaintiff
could only obtain psychic damages from her employer for work-re-
lated injury and only to the extent provided in the statute; further-
more, she would be precluded from obtaining psychic damages from a
fellow employee, even if part of supervision, by the terms of the
workmen's compensation statute.

inducing a breach of contract or interference with an employment contract.

I believe it would be an unwise public policy to extend tort liability of the kind described here to employer-employee relations.

If plaintiff is entitled to claim in tort as she claims, her damages would appear to be limited to those she would be entitled for breach of contract. The nature of the tort asserted here is such that it cannot be greater than that out of which it arises, namely, discharge from employment.

Thus, here, defendant did not induce a breach of plaintiff's employment contract nor interfere with her employment contract in the sense that would entitle her to sue him for damages under the tort theory asserted.

This ruling does not condone or indicate approval of the gross impropriety of firing an employee for refusal of sexual relations, if it occurred, but plaintiff will have to pursue the usual remedies for unlawful discharge from employment.

Therefore, I would not permit an employee this cause of action under these circumstances. The trial court reached the correct result. I would affirm.