**Efton A. STANFIELD, Appellant,**

v.

**NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, INC., et al., Respondents.**

**No. KCD 29618.**

Missouri Court of Appeals, Western District.

Oct. 1, 1979.

James A. Christenson, Independence, for appellant.

Guy Farmer, Farmer, Shibley, McGuinn & Flood, Washington, D.C., Sandra L. Schermerhorn, Kansas City, for respondents.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

TURNAGE, Judge.

Efton Stanfield filed suit against the National Electrical Contractors Association, Inc., (NECA) and a number of employees of that organization. NECA and all the other defendants filed a motion to dismiss the petition for failure to state a claim upon which relief could be granted. The court sustained this motion and dismissed the petition. The order of dismissal did not recite that it was without prejudice and so the dismissal order was with prejudice under Rule 67.03. *Koller v. Ranger Insurance Co.*, 569 S.W.2d 372[1, 2] (Mo.App.1978).

On this appeal Stanfield contends his petition stated a cause of action for tortious interference with his contract of employment. Reversed and remanded.

■ Stanfield's petition covers twenty pages in the transcript and to say the least is not a model pleading. However, pleadings "are to be given a liberal construction, and are to be accorded their reasonable and fair intendment. A pleading is not to be held insufficient merely because of a lack of definiteness or certainty in allegation or because of informality in the statement of an essential fact." *Merriman v. Caton*, 395 S.W.2d 106, 109[1–3] (Mo.1965).

In essence, Stanfield pleaded that he had been employed for almost ten years as executive vice president of the Kansas City Chapter of National Electrical Contractors Association, which was a separate Missouri corporation from NECA. The petition alleged that all of the defendants entered into a conspiracy to have Stanfield removed from his position, and, pursuant to this conspiracy, defendant Robert L. Higgins, executive vice president of NECA, came to Kansas City and met with the board of directors of the Kansas City chapter. The petition alleged that prior to the visit by Higgins, other defendants had made derogatory statements about Stanfield because of Stanfield's efforts in organizing an exchange club of local chapter managers across the country. The petition alleged another reason Higgins wanted to remove Stanfield was because of his ability to establish a

neutral hiring hall despite the union's desire for a hall operated by the union. Stanfield alleged that in April, 1974, the general membership of the local chapter had voted to sustain Stanfield in his position as executive vice president of the chapter. Within two or three days after this action, Higgins came to Kansas City, met with the board of directors of the local chapter, and dictated petitions for the local chapter to become a "sponsored chapter." Various members of the chapter asked Higgins if Stanfield would remain in his position if the chapter became a "sponsored chapter" and Higgins assured them Stanfield would remain. Acting on the representation, which Higgins knew to be false, many members signed the petition.

The petition alleged that Higgins was determined to have Stanfield removed from his position because Higgins feared Stanfield represented a threat to Higgins' position in the NECA. The petition alleged that Stanfield did not have a contract for a definite term of employment, but his salary had increased from $23,900 to over $30,000 per year, and that minutes of the local chapter contained agreements to pay him a pension at age 65 at the rate of 50% of the highest five years of his salary. The petition alleged that Higgins met with the board of directors of the local chapter in June, 1974, and that Higgins left the meeting three times to request Stanfield to resign. When Stanfield refused, Higgins used threatening language toward Stanfield, and later that day dictated a letter to Stanfield terminating his employment. Stanfield's employment thereupon terminated and Stanfield turned over all property belonging to the local chapter. Later, Stanfield requested a letter of reasons for his termination and Higgins wrote the termination was because of Stanfield's lack of understanding and suitability to manage the affairs of the association.

The petition alleged the real reason Stanfield was removed was because he constituted a threat and embarrassment to Higgins because of the establishment of the neutral hiring hall and the exchange club and for the purpose of enabling Higgins to gain control of the local chapter.

■ Stanfield principally urges that his petition states a cause of action for the tortious interference with his employment contract with the local chapter of NECA. The essential elements for tortious interference of contract are quoted in *Smith v. Standard Oil, Div. of Amoco Oil Co.*, 567 S.W.2d 412, 417[5, 6] (Mo.App.1978) as:

"1) that a contract was in existence; 2) that the defendant had knowledge of the contract; 3) that the defendant induced or caused the breach of the contract; (4) that the defendant's acts were not justified; and 5) that the plaintiff thereby suffered damages."

Reading the petition under the rules set out above, this court concludes the petition does state a cause of action for tortious interference with contract. In considering the essentials of that cause of action it is apparent there was a contract in existence, that Higgins and the other defendants had knowledge of Stanfield's contract of employment with the local chapter, there was no justification for any of the defendants to interfere with the employment contract existing between Stanfield and the Kansas City chapter, and that on his termination he suffered damages. The only element which requires an examination of the pleadings to determine its existence is that which requires the defendant to have induced the breach. Here the petition alleges that Higgins became quite angry and upset with Stanfield over the establishment of a neutral hiring hall in Kansas City and in Stanfield's activity in establishing the exchange club. The petition alleges Higgins then, in concert with the other defendants, determined to have Stanfield removed from his employment. The petition alleges Higgins came to Kansas City after the local chapter had voted its confidence in Stanfield and obtained the necessary signatures for the Kansas City chapter to become a "sponsored chapter" by use of false representations that Stanfield would remain in his position.

The petition clearly alleges that the local chapter retained an identity separate from

NECA after it became a "sponsored chapter." Although the specific powers retained by the local chapter or the powers the sponsorship conferred on Higgins is not indicated, Stanfield does allege that the board of directors of the local chapter met and that Higgins met with them. The petition does not allege what was said in the board of directors meeting attended by Higgins. However, from the effort to get Stanfield to resign, it is a fair inference that Higgins obtained some approval or authority from the board to terminate Stanfield. Thus, considering the allegations that Stanfield was fired that same day, that Higgins was determined to end Stanfield's employment, and that Higgins was motivated by ill will and personal jealousy, the petition pleaded sufficient facts that Higgins induced the firing of Stanfield by the local chapter.

Higgins and the other defendants, in their brief, urge the petition was properly dismissed because of the absence of a conspiracy. However, it is unnecessary to decide whether or not a conspiracy has been adequately pleaded because the gist of the action is not conspiracy but the action taken pursuant to it, and even if a cause of action is not stated to show a conspiracy with resulting action, still recovery may be had against one or more defendants shown to have been guilty of a wrong. *Rosen v. Alside, Inc.*, 248 S.W.2d 638, 643[1–5] (Mo. 1952). Since a cause of action was at least pleaded against Higgins the motion should not have been sustained.

■ It is next contended the petition was properly dismissed because NECA took over the local chapter when the local chapter became a "sponsored chapter," and NECA became the employer and could not interfere with its own contract. This is not what was pleaded in the petition. From the facts pleaded, the board of directors of the local chapter continued to exist and function and the clear inference is that Higgins obtained some capacity with the local chapter, but not to the exclusion of the existence of the local chapter and its continued viability as a separate entity. In any

event, there is nothing to suggest that Higgins became the employer of Stanfield to the complete exclusion of the local chapter. The petition clearly stated Higgins acted only from motivations of spite and ill will. A corporate officer is privileged to induce a corporation to breach a contract so long as he acts in good faith to protect the corporation and does not act for his own personal benefit. *Nola v. Merollis Chevrolet Kansas City Inc.*, 537 S.W.2d 627, 634[3, 4] (Mo.App. 1976). Here, the petition clearly alleged the acts of Higgins were not motivated by good faith.

The final contention against a cause of action being pleaded for tortious interference with contract is that Stanfield had a contract of employment which was terminable at will. The position alleges Stanfield had a contract of employment but does not allege it was for any specified term. This meant he could be terminated at will. *Maddock v. Lewis*, 386 S.W.2d 406, 410[5] (Mo.1965). However, a cause of action for tortious interference with a contract, terminable at will, is recognized by the Restatement of the Law, 2d, Torts, § 766, comment g (1979). The comment states, "Until he has so terminated it, the contract is valid and subsisting, and the defendant may not improperly interfere with it."

■ The fact that a contract of employment was one at will did not defeat an action for tortious interference with a contract in *Tash v. Houston*, 74 Mich.App. 566, 254 N.W.2d 579 (1977). This court concludes that a contract terminable at will may be the subject of a cause of action for tortious interference when the interference is alleged to have occurred while the contract was in existence.

The petition alleged a cause of action for tortious interference with contract because it invokes the required substantive principles of law. It is sufficient because it informs the defendants of what facts Stanfield will attempt to prove at trial to prove his cause of action. *Scheibel v. Hillis*, 531 S.W.2d 285, 290[12–14] (Mo.banc 1976); *Fischer, Spuhl, Herzwurm & Associates, Inc. v. Forrest T. Jones & Co., et al.*, 586

S.W.2d 310 (Mo.banc 1979) [handed down September 11, 1979]. The judgment is reversed and the cause is remanded.

All concur.