Peter A. CARLSON, Plaintiff,

v.

WESTBROOKE SERVICES CORP., a Texas Corporation and George Pappas, Jointly and Severally, Defendants.

No. 91–CV–76471–DT.

United States District Court, E.D. Michigan, S.D.

Sept. 4, 1992.

David D. Kohl, Novi, MI, for plaintiff.

Charles C. DeWitt, Jr., Bryan Monaghan, Detroit, MI, for defendants.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

### INTRODUCTION

This matter is before the Court on defendants Westbrooke Services Corporation's ("Westbrooke's") and George Pappas' ("Pappas'") Motion for Summary Judgment. Defendants bring this Motion pursuant to Fed. R.Civ.P. 12(b)(6) and 56(c). Plaintiff, Peter Carlson, filed a response brief and defendants replied thereto. Pursuant to E.D.Mich.L.R. 7.1(e)(1) the Court will decide this motion based on the briefs submitted by the parties and without oral argument. For the reasons set forth below, defendants' Motion for Summary Judgment is denied in part and granted in part.

## I. FACTS

Integar Corporation owns and operates a chain of hotels known as "Holiday Inn Hotels." Pursuant to a contract, defendant Westbrooke provides the management services for Intregar Corporation for the Holiday Inn Hotels. Integar Corporation is not a defendant is the instant case. Defendant Pappas is an employee of Westbrooke and occupied the General Manager position at the Livonia Holiday Inn.

Pappas became General Manager at the Livonia Holiday Inn on October 1, 1990. On October 10, 1990, he hired Carlson as the Executive Housekeeper for the Livonia Holiday Inn. Carlson does not dispute the fact that his employment as Executive Housekeeper was "at-will." On April 24, 1991, Pappas informed plaintiff that his employment as Executive Housekeeper had been terminated.

Plaintiff filed a Complaint in Wayne County Circuit Court alleging the following causes of action: 1) violation of the Michigan Elliott–Larsen Civil Rights Act, M.C.L.A. § 37.2101 et seq. ("Elliott–Larsen"); 2) violation of public policy; and 3) interference with contractual or advantageous relations. Defendants timely removed this action to Federal Court.

Plaintiff contends that Pappas ordered plaintiff to discharge a majority of black housekeeping employees for the sole reason of their race. When plaintiff refused to fire them, and actually hired more blacks into the housekeeping department, he was fired.

Defendants assert in their briefs that although Pappas was the one who informed plaintiff that his employment had been terminated, that in fact it was Hans Beckerwerth, a Regional Manager for Westbrooke, who instructed Pappas to terminate plaintiff's employment. The reason for termination being that Beckerwerth believed that plaintiff did not display the "sense of urgency" required to meet housekeeping standards.

## II. OPINION

### A. SUMMARY JUDGMENT STANDARD

Plaintiff, in Count I of his Complaint, alleges a claim for retaliation under Elliott–Larsen. Defendants move for Summary Judgment pursuant to Fed.R.Civ.P. 56(c). Count II of plaintiff's Complaint alleges a claim that his termination is actionable as a violation of public policy. Defendants move for Summary Judgment on this Count pursuant to Fed.R.Civ.P. 12(b)(6) and 56(c). In Count III of his Complaint, Carlson alleges that Pappas interfered with an advantageous relationship between plaintiff and Westbrooke. Defendants move for Summary Judgment on Count III pursuant to Fed. R.Civ.P. 12(b)(6) and 56(c).

Fed.R.Civ.P. 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has stated that the standard the Court must apply in determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In *Anderson*, the Supreme Court also noted that "[b]y its very terms, the standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. at 2510 (emphasis in original).

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Finally, since the par-

ties have presented "matters outside the pleadings ... [defendants' 12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Fed.R.Civ.P. 12(c).

## B. ELLIOTT–LARSEN

■ Under Elliott–Larsen a person is forbidden from "[r]etailiat[ing] or discriminat[ing] against a person because the person has opposed a violation of the Act...." MCLA 37.2701(a). Carlson asserts that his decision to rebuff Pappas' directive to fire black housekeeping employees constitutes an opposition to a violation of Elliott–Larsen, and thus Pappas' retaliatory discharge of Carlson violated M.C.L.A. 37.2701(a).

"In order to establish a prime facie case of unlawful retaliation under Elliott–Larsen, a plaintiff must establish (1) that he opposed violations of the Act ... and (2) that the opposition ... was a significant factor in an adverse employment decision." *Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989) (citing *Polk v. Yellow Freight System, Inc.,* 801 F.2d 190, 199 (6th Cir.1986); *Jackson v. Pepsi–Cola, Dr. Pepper Bottling Co.,* 783 F.2d 50, 54 (6th Cir.1986), *cert. denied,* 478 U.S. 1006, 106 S.Ct. 3298, 92 L.Ed.2d 712 (1986). "[T]he 'significant factor' standard imposes a more lenient standard than the 'but for' test ... [however] it requires a showing of more than a 'causal link.'" *Polk,* 801 F.2d at 199. "A factor can be a 'cause' without being 'significant' [and] only the latter is sufficient to show retaliatory discharge." *Id.*

The crux of defendants' argument is that assuming Carlson opposed Pappas' alleged racially discriminatory personnel policies, that the alleged opposition was not a significant factor in an adverse employment decision. This argument is based on an affidavit from Beckerwerth, Westbrooke's Regional Manager, in which Beckerwerth avers that he "urged" Pappas to terminate Carlson for nondiscriminatory reasons and that Beckerwerth had no knowledge of Pappas' alleged discriminatory policies. According to defendants' argument, Beckerwerth, and not Pappas, made the decision to terminate Carlson's employment. Therefore, when Carlson op-

posed Pappas' order to violate Elliott–Larsen, this opposition was not a significant factor in an adverse employment decision towards Carlson, because Pappas did not make the decision to discharge Carlson.

While Carlson's statement in his Affidavit, that it was Pappas who actually informed Carlson of his termination, is insufficient to rebut summary judgment, Carlson has come forward with additional evidence to meet his burden. First, Carlson relies on Westbrooke's and Pappas' answers to Plaintiff's Interrogatories. Specifically, when asked to state the name, address, title and race of each person who decided to terminate Plaintiff's employment, Defendants responded "See Plaintiff's personnel file, attached at Table 2 to Plaintiff's First Request for Production of Documents." Plaintiff's personal file contains only a single page pertaining to Carlson's termination. On this sheet there is a line for the General Manager to sign, on which Pappas placed his signature, and a line for the Regional Director to sign. However, Beckerwerth did not sign this document. Therefore, defendants' answer to this interrogatory is that Pappas was the only person who decided to terminate Carlson's employment.

Furthermore, to rebut the assertion which Beckerwerth made in his affidavit that he had counseled Carlson regarding his shortcomings, Carlson once again relies on defendants' answers to Plaintiff's interrogatories. Specifically, when asked if any warnings were ever given to Carlson regarding his job performance, and if so, who gave the warnings, defendants responded that only Pappas gave oral warnings to Plaintiff concerning his work performance.

Carlson, as the nonmoving party, has come forward with requisite proof to support his claim of retaliatory discharge. Carlson has established that there is a genuine issue of material fact as to who actually decided to terminate his employment. By using defendants' answers to interrogatories, Carlson has presented evidence that a significant disagreement exists as to this issue to require that it be submitted to a jury. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

In addition, defendants argue that even if Carlson can establish a prima facie claim under Elliott–Larsen, that summary judgment is still appropriate. Defendants base this argument on the fact that once a plaintiff establishes a prima facie case under Elliott–Larsen, the burden then shifts to the employer to articulate a legitimate business reason for terminating the plaintiff's employment. *Polk,* 801 F.2d at 199. If the employer meets its burden, the burden then shifts back to the plaintiff to prove that the employer's business reason was merely "pretext." *Id.* Defendants contend that Carlson cannot meet his burden of proving pretext.

In order for a plaintiff to establish pretext under Elliott–Larsen, a plaintiff must establish that either the employer's "proffered reason is not worthy of credence" or that a "discriminatory reason more likely motivated the employer." *Balwinski v. City of Bay City,* 168 Mich.App. 766, 769, 425 N.W.2d 218 (1988). Defendants maintain that there is no evidence that its proffered reason for terminating Carlson's employment, Carlson's work performance was unacceptable, is "not worthy of credence." Defendants rely on the fact that the Hotel failed two inspections while Carlson was the Executive Housekeeper.

However, Carlson has come forward with requisite proof that creates a genuine issue as to this fact. Carlson has shown evidence that despite the fact that the Hotel itself failed these two inspections, that the Housekeeping Department actually passed its portion of the second inspection. Indeed, Pappas threw a party for the Housekeeping Department to reward them for passing the second inspection. This evidence creates a significant disagreement to this issue to require that it be submitted to a jury. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

Defendants also argue that there is no evidence to support a finding that the alleged retaliatory reason "more likely motivated" the employer's decision to terminate Carlson's employment. Defendants' argument is grounded in their contention that it was Beckerwerth, and not Pappas, who made the decision to discharge Carlson as Executive Housekeeper. Defendants assert that since Beckerwerth did not know of Pappas' alleged racially motivated policies, that Carlson cannot prove pretext in the decision.

As stated above, Carlson has come forward with evidence that presents a sufficient disagreement on the issue of who decided to terminate Carlson's employment, and thus it must be submitted to a jury. *See Anderson,* 477 U.S. at 251, 106 S.Ct. at 2512. Accordingly, defendants' Motion for Summary Judgment on plaintiff's Elliott–Larsen claim is denied.

## C. PUBLIC POLICY VIOLATION

In Count II of his Complaint, Carlson alleges that his termination violated the public policy of Michigan, and therefore it is actionable. As stated above, Carlson does not dispute the fact he was an at-will employee. Under Michigan law, as a general rule, an at-will employee may be terminated at any time and for any reason. *Authier v. Ginsberg,* 757 F.2d 796, 798 (6th Cir.1985) (citing *Lynas v. Maxwell Farms,* 279 Mich. 684, 687, 273 N.W. 315, 316 (1937)). However, an exception to this rule is that "an employee may not be discharged in violation of a 'clearly articulated, well-accepted public policy.'" *Authier,* 757 F.2d at 798 (quoting *Clifford v. Cactus Drilling Corp.,* 419 Mich. 356, 367, 353 N.W.2d 469, 474 (1984)).

The Michigan Supreme Court created this exception in *Pompey v. General Motors Corp.,* 385 Mich. 537, 189 N.W.2d 243 (1971). In *Pompey,* plaintiff's cause of action under the then existing Michigan State Fair Employment Practices Act, M.C.L.A. § 423.301 *et seq.,* for alleged racial discrimination in the work place was barred by the statute of limitations. However, the Court went on to hold "that [a] plaintiff can maintain a civil damage action for redress of his statutorily created civil right to be free from discrimination in private employment, and that this remedy may be pursued *in addition* to the remedial machinery provided by statute." *Id.* at 560, 189 N.W.2d 243. Elliott–Larsen's subsequent enactment did not affect the holding *Pompey. See Suchodolski v. Michi-*

*gan Consolidated Gas Co.,* 412 Mich. 692, 695, 316 N.W.2d 710 (1982).

"In order to invoke this public policy exception, a plaintiff must establish that he was engaged in a protected activity, that he was discharged, and that his discharge was due to performing the protected activity." *Authier v. Ginsberg,* 757 F.2d 796, 798 (6th Cir.1985) (citing *Clifford v. Cactus Drilling Corp.,* 419 Mich. 356, 367, 353 N.W.2d 469, 474 (1984)). For the purpose of this motion, defendants do not contest that Carlson was engaged in protected activity or that he was discharged.

Defendants contend that Carlson's public policy claim fails because he was not discharged due to performing the protected activity. Defendants argue along the same line as they did in support of their Motion for Summary Judgment on Carlson's Elliott–Larsen claim, namely, that it was Beckerwerth, not Pappas, who decided to terminate Carlson's employment as Executive Housekeeper.

As stated above in the Court's discussion of Carlson's Elliott–Larsen claim, Carlson has come forward with evidence that presents a sufficient disagreement to require the issue—of who decided to terminate Carlson's employment—be submitted to a jury. *See Anderson,* 477 U.S. at 251, 106 S.Ct. at 2512. Accordingly, defendants' Motion for Summary Judgment on Carlson's violation of public policy claim is denied.

## D. INTERFERENCE WITH CONTRACTUAL OR ADVANTAGEOUS RELATIONS

■ Carlson, in Count III of his complaint, alleges a cause a action against defendants for alleged interference with contractual or advantageous relations with Westbrooke.[1] The contractual relations is based on Carlson's contract of at-will employment with Westbrooke. For the reasons below, defendants' Motion for Summary Judgment on this count is granted.

Although there is authority to the contrary,[2] the Court finds the holding of *Dzierwa v. Michigan Oil Co.,* 152 Mich.App. 281, 393 N.W.2d 610 (1986), persuasive on the issue of whether an at-will employee, whose employment has been terminated, may state a cause of action for tortious interference. In *Dzierwa,* the Court stated that "[t]o maintain a cause of action for tortious interference with a contract, a plaintiff must establish a breach of contract caused by the defendant ... and that the defendant was a 'third party' to the contract...." *Id.* at 287, 393 N.W.2d 610. The Court went on the hold that "since plaintiff's employment contract was terminable at will, there could be no breach arising from its termination." *Id.*

The *Dzierwa* Court adopted the reasoning set forth in the dissenting opinion in *Tash v. Houston,* 74 Mich.App. 566, 254 N.W.2d 579 (1977), *lv. denied,* 401 Mich. 822 (1977). The dissent in *Tash* argued that the cause of action for tortious interference with a contract "was never intended and does not apply to the relationship between employer and employee." *Id.* 74 Mich.App. at 574–75, 254 N.W.2d 579 (Cavanagh, J., dissenting). The dissent reasoned that since "[t]he employer breaches the contract, he does not induce a breach or interfere with the contract. The employer is liable in damages for breach of

---

1. The Court construes this Count to be limited to the tort of interference with existing contractual relations and not to include a claim for tortious interference with a business relationship, because the cases which Plaintiff cites in his response brief are limited to cases involving the tort of interference with contractual relations.

2. *See Feaheny v. Caldwell,* 175 Mich.App. 291, 437 N.W.2d 358 (1989); *Tash v. Houston,* 74 Mich.App. 566, 569–70, 254 N.W.2d 579 (1977). The rationale underpinning these decisions is that the at-will employee's employment "will presumably continue in effect absent wrongful interference by a third party.... [and that] the employee has a manifest interest in the freedom of

the employer to exercise his or her judgment without illegal interference...." 175 Mich.App. at 303, 437 N.W.2d 358. However, the basic premise of this reasoning is flawed: at-will employment will *not* presumably continue in effect absent wrongful interference by a third party. The general rule under Michigan law is that an at-will employee may be terminated *at any time* and *for any reason. Authier v. Ginsberg,* 757 F.2d 796, 798 (6th Cir.1985) (citation omitted). Therefore, even in the absence of wrongful interference by a third party an at-will employee's employment will *not* presumable continue in effect. Accordingly, the Court finds *Feaheny* and *Tash* unpersuasive.

contract, *not* the tort of inducing a breach of or interfering with the employment contract." *Id.* at 575, 254 N.W.2d 579.

The Court finds this reasoning persuasive. Accordingly, defendants' Motion for Summary Judgment on Count III of Plaintiff's complaint is granted.[3]

## CONCLUSION

For the reasons stated above, defendants Westbrooke's and Pappas' motion for summary judgment is DENIED IN PART AND GRANTED IN PART.

IT IS SO ORDERED.

---

**3.** Since the Court holds that there is no cause of action for interference with a contract because Plaintiff was an at-will employee, the Court does not address the second prong of the test, namely, whether Pappas was a "third party" to the contract.