ALLINGER v KELL

Docket No. 44792. Submitted May 13, 1980, at Marquette.—Decided
January 21, 1981. Leave to appeal applied for.

The adult married daughter of Albert W. and Bernice C. Allinger,
who was residing with the Allingers, was found murdered. The
Allingers entered into a contract with the Kell-Tondin Chapel,
Inc., a funeral home, and its principal owner, Lenwood E. Kell,
for the purposes of preparation for burial, preservation pending
final interment and burial of their daughter's body. Subse-
quently, Fred H. Ayers, M.D., the deputy medical examiner for
Menominee County, without the consent of the Allingers but
with the permission of Kell, removed the hands and natural
hair from the corpse.

During the preliminary examination of an individual charged
with the murder it was revealed that Ayers had severed the
hands and hair from the deceased. The Allingers filed suit
against Lenwood Kell, the Kell-Tondin Chapel, Inc., and Fred
H. Ayers, M.D., in Menominee Circuit Court, alleging that 1)
defendants funeral home and Kell breached their duty to
properly bury plaintiffs' daughter by allowing the mutilation of

REFERENCES FOR POINTS IN HEADNOTES

[1] 18 Am Jur 2d, Coroners or Medical Examiners § 14.
   22 Am Jur 2d, Dead Bodies § 32.
[2] 22 Am Jur 2d, Dead Bodies § 31.
[3] 22 Am Jur 2d, Dead Bodies §§ 4, 43.
   74 Am Jur 2d, Torts § 34.
[4] 22 Am Jur 2d, Dead Bodies § 4 *et seq.*
[5-8, 13, 14] 22 Am Jur 2d, Dead Bodies § 43.
[9] 18 Am Jur 2d, Coroners or Medical Examiners § 5.
[10] 18 Am Jur 2d, Coroners or Medical Examiners § 14.
[11, 15, 16, 19, 20] 22 Am Jur 2d, Dead Bodies §§ 31, 32.
   Liability in damages for withholding corpse from relatives. 48
   ALR3d 240.
[12] 18 Am Jur 2d, Coroners or Medical Examiners § 14.
   22 Am Jur 2d, Dead Bodies § 35.
[17] 73 Am Jur 2d, Summary Judgment § 15.
[18] 17 Am Jur 2d, Contracts § 441.
[19] 18 Am Jur 2d, Coroners or Medical Examiners §§ 1, 14.
[20, 21] 18 Am Jur 2d, Coroners or Medical Examiners § 7.

the corpse, 2) the defendants breached their duty to disclose such mutilation to plaintiffs, 3) the defendants funeral home and Kell breached their contract with the plaintiffs for burial, by allowing such mutilation to occur, and 4) defendant Ayers acted without authority or right in severing and removing the hands and hair from the deceased, thereby violating the plaintiffs' right to provide a proper and decent burial for their daughter. V. Robert Payant, J., entered an order granting defendants' motions for summary judgment based on plaintiffs' failure to state a claim upon which relief could be granted. Judge Payant determined that, although the plaintiffs had standing to bring an action for the unlawful and intentional mutilation of the dead body, such an action was precluded here since the alleged damages for the mental anguish were not contemporaneous with the actual mutilation and the contract action was precluded because the plaintiffs failed to allege that the defendants funeral home and Kell breached any agreement to provide a funeral service. The plaintiffs appeal. *Held:*

1. The plaintiffs were the proper parties to bring this suit since the unlawful and intentional mutilation of a dead body gives rise to a cause of action on behalf of the person or persons entitled to the possession, control, and burial of such body.

2. No autopsy, postmortem or dissection should be performed upon a dead human body except by a physician who has been granted written consent by whoever of the following assumes custody of the body for purposes of burial: parent, surviving spouse, next of kin or any person charged by law with the responsibility for burial.

3. The right of recovery for the unlawful and intentional mutilation of a dead body gives rise to a cause of action for damages based upon principles of tort and contract law. Under tort law, the recovery is based upon infringement of the right of the plaintiffs to have the body delivered for burial and interred without mutilation, other than that present at the time of death.

4. The proper measure of damages for mutilating or otherwise improperly treating a corpse is the mental anguish or humiliation suffered by the plaintiffs who have been denied the comfort of knowing that the deceased has been given a comfortable and dignified resting place.

5. Recovery for injuries produced by emotional distress caused by a defendant's tortious behavior in mutilating a corpse is available even without accompanying physical impact. The trial judge erred in ruling that, because the plaintiffs' mental anguish was not contemporaneous with the mutilation

of the corpse, recovery was precluded for lack of damages since the wrong complained of was personal to the individual plaintiffs. The plaintiffs' claim for damages was based on the alleged injury to the specific right of the plaintiffs to have the corpse under their control delivered for burial and interred without mutilation. Where an action for damages for mental anguish does not arise from harm done to another but is based on the wrong done to the plaintiffs there is no extraordinary requirement of contemporaneousness of the mutilation and the mental anguish.

6. Defendant Ayers was immune from suit because at the time he severed the hands from the corpse of the plaintiffs' daughter he was acting in his capacity as deputy medical examiner for Menominee County. The general rule prohibiting autopsies, postmortems or dissections without the consent of the person assuming custody of the body for burial is inapplicable where such act is performed pursuant to and under authority of law.

7. Since defendant Ayers, as county medical examiner, had the statutory authority to perform the autopsy and dissection, defendants Kell and Kell-Tondin Chapel, Inc., may not be held liable in tort to the custodians of the deceased for their acts in cooperation with him.

8. Generally, damages are recoverable for mental anguish arising out of the breach of a personal contract including a contract for the care and burial of a dead body. If the burial contract between plaintiffs and defendants Kell and Kell-Tondin Chapel, Inc. contained a provision for notification to plaintiffs of the removal of body parts from the corpse defendants may be liable under an additional duty imposed by contract to timely notify the plaintiffs of any surgical procedure performed on the corpse. It is clear that plaintiffs were not informed of the mutilation of their daughter's body until nearly 40 days after the burial, and then only because the matter was brought out during a public hearing. Any contractual liability for the actual mutilation of the corpse would be excused by reason of the county medical examiner's statutory authority to conduct the operation. The trial judge erred in part in granting defendants' motions for summary judgment with respect to the contract count.

Affirmed in part, reversed in part, and remanded.

Each judge wrote an opinion. The opinion of ALLEN, J., was concurred in at every point by at least one other judge.

BRONSON, J., would hold that summary judgment was improperly granted on the tort claims. He does not consider a

medical examiner to be totally immune from suit when he removes and retains body parts for the detection of crime, and would hold that an action in tort can properly seek to challenge the reasonableness of the medical examiner's belief that his actions were necessary. He would reverse and remand for trial on all counts since, on the record, summary judgment was inappropriate.

MacKENZIE, P.J., would hold that the trial judge did not err in granting summary judgment on the contract claim, either. She reasoned that the allegations in plaintiffs' complaint as to express contractual provisions between the plaintiffs and defendants Kell and Kell-Tondin were in vague and general language. Private parties cannot contract to avoid actions by public officials. She would hold that, even if plaintiffs had specifically pled that the burial agreement contained a promise by defendants Kell and Kell-Tondin that they would prevent the medical examiner from removing the hands of the deceased for evidentiary purposes, such a provision would not have been enfoceable since the medical examiner has authority to conduct autopsies without the consent of the next of kin and to retain such portions of the body as believed by him to be necessary for the detection of any crime.

OPINION OF ALLEN, J.

1. DEAD BODIES — AUTOPSIES — STATUTES.

    An autopsy, postmortem or dissection shall not be performed upon a dead human body, unless otherwise provided by law, except by a physician who has been granted written consent by whoever of the following assumes custody of the body for purposes of burial: parent; surviving spouse; next of kin; or any person charged by law with the responsibility for burial (MCL 333.2855; MSA 14.15[2855]).

2. DEAD BODIES — MUTILATION — TORTS.

    The unlawful and intentional mutilation of a dead body gives rise to a cause of action on behalf of the person or persons entitled to the possession, control and burial of such body.

3. DEAD BODIES — MUTILATION — TORTS — CONTRACTS.

    The right of recovery for the unlawful and intentional mutilation of a dead body is based upon principles of tort and contract law.

4. DEAD BODIES — MUTILATION — TORTS.

    Recovery for the intentional or negligent mutilation of a dead body under tort law is based upon infringement of the right of

the plaintiff to have the body delivered for burial and interred without mutilation, other than that present at the time of death.

5. DEAD BODIES — MUTILATION — TORTS — DAMAGES.

The measure of damages for mutilating or otherwise improperly treating a corpse is to measure the mental anguish or humiliation suffered by the plaintiff who has been denied the comfort of knowing that the deceased has been given a comfortable and dignified resting place.

6. DEAD BODIES — MUTILATION — EMOTIONAL DISTRESS — DAMAGES.

Recovery for injuries produced by emotional distress caused by a defendant's tortious behavior in mutilating or otherwise improperly treating a corpse is available even without accompanying physical impact.

7. TORTS — MENTAL ANGUISH — INTENTIONAL TORTS — FAMILY MEMBERS.

A cause of action does not exist for damages for mental anguish sustained upon learning of an intentional tort committed at a noncontemporaneous time upon an immediate family member.

8. TORTS — MENTAL ANGUISH.

There is no requirement of contemporaneousness of the harm and anguish where an action for damages for mental anguish does not arise from harm done to another, but is based on the wrong done to the plaintiff.

9. DEAD BODIES — AUTOPSIES — POSTMORTEMS — STATUTES.

The general rule prohibitng autopsies, postmortems or dissections, without the consent of the person assuming custody of the body for burial is inapplicable where such act is performed pursuant to and under authority of law (MCL 333.2855[2]; MSA 14.15[2855][2]).

10. CORONERS — AUTOPSIES — DEATH BY VIOLENCE — STATUTES.

A county medical examiner may conduct an autopsy whenever he determines that an autopsy reasonably appears to be required pursuant to his duty to make investigations as to the cause and manner of death in all cases of persons who have come to their death by violence (MCL 52.202, 52.205; MSA 5.953[2], 5.953[5]).

11. DEAD BODIES — CORONERS — RETAINING OF BODY PARTS — STATUTES.

A county medical examiner is required to return the body of the

deceased to the appropriate party after performing an autopsy except that such examiner may retain, as long as may be necessary, any portion of such body believed by him to be necessary for the detection of any crime (MCL 52.205; MSA 5.953[5]).

12. DEAD BODIES — AUTOPSIES — UNDERTAKERS.

An undertaker with whom a corpse is entrusted is not liable for his acts of cooperation with a medical examiner who performs an autopsy or dissection on the corpse, if the examiner has authority to perform the autopsy.

13. CONTRACTS — MENTAL ANGUISH — DAMAGES.

Damages are recoverable for mental anguish arising out of the breach of a personal contract.

14. DEAD BODIES — CONTRACTS — MENTAL ANGUISH.

Generally, damages for mental anguish arising out of the breach of a contract for the care and burial of a dead body are recoverable.

OPINION OF BRONSON, J.

15. DEAD BODIES — AUTOPSIES — MEDICAL EXAMINERS — IMMUNITY — STATUTES.

*A medical examiner who retains any portions of a body while performing an autopsy is not completely immune from a law suit since such examiner may retain only such portions believed by him to be necessary for the detection of any crime (MCL 52.205; MSA 5.953[5]).*

16. DEAD BODIES — HOMICIDE VICTIMS — AUTOPSIES — RETAINING BODY PARTS — TORT ACTIONS.

*The purpose of most tort actions is to challenge the reasonableness of a defendant's conduct, and a plaintiff may recover where he can establish that the medical examiner who performed an autopsy on a homicide victim and retained body parts of that victim did not believe it was necessary to retain such body parts for the detection of a crime or that the belief was unreasonable.*

17. JUDGMENTS — SUMMARY JUDGMENTS — COURT RULES.

*A motion for summary judgment on the ground that a plaintiff failed to state a claim upon which relief can be granted challenges the legal sufficiency of the pleadings alone and is to be tested by whether, accepting all well-pleaded facts as true, the claim is so clearly unenforceable as a matter of law that no*

*factual development can possibly justify a right to recovery (GCR 1963, 117.2[1]).*

OPINION OF MacKENZIE, P.J.

18. CONTRACTS — PUBLIC OFFICIALS — AVOIDING ACTIONS.

*Private parties cannot contract to avoid actions by public officials specifically authorized by statute, and a breach of such a contract is not actionable.*

19. CORONERS — DEAD BODIES — AUTOPSIES — RETAINING BODY PARTS — CONSENT OF NEXT OF KIN — STATUTES.

*A medical examiner has authority to conduct autopsies without the consent of the next of kin and to retain such portions of the body as believed by him necessary for the detection of any crime; such belief is not required to be reasonable or correct (MCL 52.205; MSA 5.953[5]).*

20. DEAD BODIES — MEDICAL EXAMINERS — AUTOPSIES — RETAINING BODY PARTS — IMMUNITY — LEGISLATIVE PURPOSE.

*The legislative purpose in granting immunity to a medical examiner who performs an autopsy and retains various body parts for detection of any crime is the public interest in detecting crime and obtaining evidence to convict criminals, and the state's interest in law enforcement outweighs the rights the next of kin of a murdered person may have in keeping the dead body inviolate.*

21. DEAD BODIES — MEDICAL EXAMINERS — PUBLIC DUTY — IMMUNITY FROM SUIT.

*A medical examiner is charged with a public duty, and in the absence of specific pleading of facts showing that he was acting contrary to his statutory duty, he is immune from suit for his actions in retaining portions of a body believed by him necessary for the detection of crime.*

*Green, Renner, Weisse, Rettig, Rademacher & Clark,* for plaintiffs.

*David J. Lori, P.C.,* for defendants Lenwood E. Kell and Kell-Tondin Chapel, Inc.

*McDonald & Shortley,* for defendant Fred H. Ayers, M.D.

Before: MacKenzie, P.J., and Bronson and Allen, JJ.

Allen, J. This case involves the alleged mutilation of a corpse for criminal investigatory purposes and the legal responsibilities of a funeral home and county medical examiner in connection therewith. On April 11, 1979, the Menominee Circuit Court entered an order granting the funeral home's and medical examiner's motions for summary judgment. Plaintiffs appeal of right.

Plaintiffs' adult married daughter, who was residing with them at the time of her demise, was found dead by criminal means, by a person then unknown, on October 2, 1977. Plaintiffs entered into a contract with defendant Kell-Tondin Chapel, Inc., a funeral home, and its principal owner, Lenwood E. Kell, for the purposes of preparation for burial, preservation pending final interment, and burial of their daughter's body. On October 6, 1977, while the corpse was in the possession of defendant funeral home, defendant Ayers, the deputy medical examiner for Menominee County, without the consent of plaintiffs and with the permission and consent of defendant Kell, removed the hands and natural hair from the corpse.

On November 22, 1977, plaintiffs attended a preliminary examination of Edward Cramer, charged with the murder of plaintiffs' daughter. During the examination, it was revealed in open court that defendant Ayers severed the hands and natural hair from the body of the deceased. This was the first time that plaintiffs learned of defendants' actions, and, as a result, allegedly suffered mental anguish and emotional distress, resulting in various physical illnesses.

Count I of plaintiffs' four-count complaint filed November 20, 1978, alleged that defendants fu-

neral home and Kell breached their duty to plaintiffs in allowing the mutilation of plaintiffs' daughter's corpse. Count II alleged that defendants breached their duty to disclose such mutilation to plaintiffs. Count III alleged that defendants funeral home and Kell breached their contract with plaintiffs for burial in allowing such mutilation to occur. Count IV of the complaint alleged that defendant Dr. Ayers acted without authority or right in severing and removing the hands and hair from the body of the deceased, thereby violating plaintiffs' right to provide a proper and decent burial for their daughter. Thus, Count III sounded in contract and the remaining counts sounded in tort.

In deciding the motion for summary judgment on the grounds that plaintiffs failed to state a claim upon which relief can be granted, the trial judge ruled:

(1) That plaintiffs, as "next of kin" who assumed "custody of the body for purposes of burial" within the meaning of MCL 328.151; MSA 14.524, had standing to bring the present action;

(2) That although plaintiffs could properly bring an action for the unlawful and intentional mutilation of a dead body, such an action was precluded in the instant case because the alleged damages for the mental anguish was noncontemporaneous with the actual mutilation; and,

(3) That the contract action by plaintiffs against defendants funeral home and Kell was precluded because plaintiffs failed to allege that defendants breached any contract to provide a funeral service.

In reviewing a grant of summary judgment under GCR 1963, 117.2(1), the motion is tested by the pleadings alone. *Todd v Biglow,* 51 Mich App 346, 349; 214 NW2d 733 (1974). Because the motion

tests only the legal and not the factual sufficiency of the pleadings, *Grasser v Fleming,* 74 Mich App 338, 342; 253 NW2d 757 (1977), all well-pleaded allegations must be taken as true. *Tash v Houston,* 74 Mich App 566; 254 NW2d 579 (1977), *lv den* 401 Mich 822 (1978). The motion should be denied unless the alleged claims are so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover. *Koenig v Van Reken,* 89 Mich App 102, 104; 279 NW2d 590 (1979), *Merit Electric Co v J Boyle, Inc,* 77 Mich App 503; 258 NW2d 539 (1977). Application of these standards of review and the relevant legal principles compel the conclusion that the trial judge erred in part in granting the summary judgment in favor of defendants Kell-Tondin Chapel, Inc., and Lenwood E. Kell.

We begin by observing that the plaintiffs were the proper parties to bring this suit. The statute relied on by the trial judge in support of his finding that the plaintiffs had standing to bring this suit was repealed between the time the acts complained of occurred and the filing of the complaint. 1978 PA 368, § 25101, effective September 30, 1978. Nonetheless, both the prior statute relied on, MCL 328.151; MSA 14.524, and the present statute, MCL 333.2855; MSA 14.15(2855), provide that, unless otherwise provided by law, no "autopsy, postmortem, or dissection shall be performed upon a dead body except by a physician, who has been granted written consent therefor by whichever 1 of the following assumes custody of the body for purposes of burial". The list which follows includes parent, surviving spouse, next of kin, or any "person charged by law with the responsibility for burial". In contrast to defendants' claim that standing to sue under the instant

facts "belongs exclusively to that person enjoying the closest legal relationship to the deceased", here, the husband of the deceased, our Supreme Court has clearly stated:

"that the unlawful and intentional mutilation of a dead body gives rise to a cause of action on behalf of *the person or persons entitled to the possession, control, and burial of such body.*" *Deeg v Detroit,* 345 Mich 371, 375; 76 NW2d 16 (1956). (Emphasis supplied.)

Since plaintiffs were entitled to, took custody of, and made all funeral arrangements for the corpse of their daughter, the trial judge was correct in holding that they had standing to sue for the mutilation of their offspring's body. *Keyes v Konkel,* 119 Mich 550; 78 NW 649 (1899), *Doxtator v Chicago & W M R Co,* 120 Mich 596; 79 NW 922 (1899), *Larson v Chase,* 47 Minn 307; 50 NW 238, 239 (1891).

It cannot be doubted that plaintiffs could properly bring the instant action against defendants. The unlawful and intentional mutilation of a dead body gives rise to a cause of action for damages. *Deeg, supra, Keyes, supra, Doxtator, supra.* This right of recovery is based upon principles of tort and contract law.

Under tort law, recovery for the intentional or negligent mutilation of a dead body is based upon infringement of the right of the plaintiffs to have the body delivered for burial and interred without mutilation, other than that present at the time of death. *Deeg, supra, Keyes, supra,* 22 Am Jur 2d, Dead Bodies, §§ 6, 17, 31, pp 559, 566, 579. Where a person has the right to bury a body, interference with that right is generally actionable. 25A CJS, Dead Bodies, § 8(1), p 510. The trial court properly recognized this theory as the basis for plaintiffs'

claims under Counts I, II and IV. In addition, the trial judge properly recognized that the measure of damages for mutilating or otherwise improperly treating a corpse is to measure the mental anguish or humiliation suffered by the plaintiffs who have been denied the comfort of knowing that the deceased has been given a comfortable and dignified resting place. Anno: *Damages for mental anguish on account of mutilation of corpse,* 12 ALR 342, Comment, *Recovery for Mental Anguish in Unauthorized Autopsy Cases,* 41 Mich L Rev 308 (1942), Anno: *Civil liability of undertaker for acts or omissions relating to corpse,* 17 ALR2d 770, § 2, p 771, Anno: *Liability for performing an autopsy,* 83 ALR2d 955, §§ 3, 6, pp 958, 966, 22 Am Jur 2d, *supra,* § 43, p 588, 25A CJS, *supra,* § 8(5)b, p 517, Restatement of Torts 2d, § 868, p 274. Recovery for injuries produced by emotional distress caused by defendants' tortious behavior is available even without accompanying physical impact. *Daley v LaCroix,* 384 Mich 4, 12; 179 NW2d 390 (1970), *Rauhe v Langeland Memorial Chapel,* 30 Mich App 665, 667; 186 NW2d 848 (1971).

However, in applying this rule of law to the instant case, the trial judge ruled that because the plaintiffs' mental anguish was not contemporaneous with the mutilation of the corpse, recovery was precluded for lack of damages. The trial judge relied on *Miller v Cook,* 87 Mich App 6; 273 NW2d 567 (1978), and *Gustafson v Faris,* 67 Mich App 363; 241 NW2d 208 (1976), in reaching this conclusion. The rule in those cases was stated in *Miller, supra,* as follows:

"[A] cause of action does not exist for damages for mental anguish sustained upon learning of an intentional tort committed at a noncontemporaneous time

upon an immediate family member". 87 Mich App 6, 11 (1978).

The trial judge's reliance on this principle of law to dismiss plaintiffs' cause of action was misplaced because in both *Miller* and *Gustafson* the plaintiffs (parents) were seeking damages for mental anguish based upon a wrong committed upon their offspring. Here, the wrong complained of was personal to the individual plaintiffs. The plaintiffs' claim for damages was based on the alleged injury to a specific right of the plaintiffs: the right to have the corpse under their control delivered for burial and interred without mutilation. Where an action for damages for mental anguish does not arise from harm done to another but is based on the wrong done to the plaintiffs, there is no extraordinary requirement of contemporaneousness as found in *Miller* and *Gustafson.* Therefore, the trial judge erred in dismissing plaintiffs' complaint on this basis.

Nevertheless, the result reached by the trial judge regarding plaintiffs' claims based on Counts I, II and IV was correct. Although the trial judge did not reach the issue because of the manner in which he disposed of the motion for summary judgment, it is clear that defendant Dr. Ayers was immune from suit under the statute because at the time he severed the hands from the plaintiffs' daughter's corpse he was acting in his capacity as deputy medical examiner for Menominee County.

MCL 333.2855(2); MSA 14.15(2855)(2) provides that the general rule prohibiting autopsies, postmortems or dissections without the consent of the person assuming custody of the body for burial is inapplicable where such act is "performed pursuant to and under authority of other law". The statute in effect at the time of the severing of the

hands from the corpse in this instance was precisely the same. MCL 328.151; MSA 14.524, repealed by 1978 PA 368, § 25101. In this regard, MCL 52.205; MSA 5.953(5) provides that the county medical examiner may conduct an autopsy whenever he determines that an autopsy reasonably appears to be required pursuant to his duty to "make investigations as to the cause and manner of death in all cases of persons who have come to their death by violence". MCL 52.202; MSA 5.953(2). In addition, MCL 52.205; MSA 5.953(5) requires the county medical examiner to return the body of the deceased to the appropriate party, "except that such examiner may retain, as long as may be necessary, any portion of such body believed by him to be necessary for the detection of any crime".

The motion, certificate of oath of office, and affidavit filed by defendant Ayers in support of his motion to dismiss, clearly indicate that he was acting in his capacity as county deputy medical examiner at the time he performed the complained of operation on the corpse of plaintiffs' daughter. Since it was also necessary to retain the severed portions of the body for further criminal investigation, we have no difficulty in holding that defendant Ayers is immune from suit for his conduct in the instant case. See 18 Am Jur 2d, Coroners or Medical Examiners, § 14, p 527.

By the same token, if a coroner has the authority to perform an autopsy or dissection, the undertaker with whom the corpse is entrusted is not liable for his acts of cooperation with the medical examiner. 22 Am Jur 2d, *supra,* § 35, p 582. The rule has been stated thus:

"A number of cases involve the question of the liability of an undertaker for his acquiescence in or assis-

tance of, either an official or an unauthorized autopsy upon a dead body. In most cases * * * the liability of the undertaker is considered coextensive with that of the official or surgeon performing the autopsy, his liability being determined according to whether the autopsy was authorized under statute or the circumstances of the case." Anno, *supra,* 17 ALR2d 770, § 6, p 777.

We agree with this statement of the law and hold that, since defendant Ayers, as county medical examiner, had the statutory authority to perform the autopsy and dissection, defendants Kell and Kell-Tondin Chapel, Inc., may not be held liable in tort to the custodians of the deceased for their acts in cooperation with him. *Winkler v Hawkes & Ackley,* 126 Iowa 474; 102 NW 418 (1905), *Kingsley v Forsyth,* 192 Minn 468; 257 NW 95 (1934), *Sturgeon v Crosby Mortuary, Inc,* 140 Neb 82; 299, NW 378 (1941), *Meyers v Clarke,* 122 Ky 866; 90 SW 1049 (1906), *Cook v Walley,* 1 Colo App 163; 27 P 250 (1891). Contrast cases cited in Anno: *supra,* 83 ALR2d 955, § 7, p 969.

Despite the nonliability in tort of defendants Kell and Kell-Tondin Chapel, Inc., under Counts I, II and IV of plaintiffs' complaint, it is possible that they remain liable to plaintiffs under contract law. Generally, damages for mental anguish arising out of the breach of a personal contract are recoverable. *Stewart v Rudner,* 349 Mich 459, 471; 84 NW2d 816 (1957), *Palmer v Pacific Indemnity Co,* 74 Mich App 259, 265-266; 254 NW2d 52 (1977). The same rule is applicable to the breach of a contract for the care and burial of a dead body. 25A, CJS, *supra,* § 6, p 508, 22 Am Jur 2d, *supra,* § 43, p 588, Anno, *supra,* 17 ALR2d 770, §§ 2, 7, pp 771, 779, Anno: *Civil liability of undertaker in connection with embalming or preparation of body*

*for burial,* 48 ALR3d 261, §§ 3(b), 5, pp 268, 271. The trial court recognized this point but held that no cause of action could be maintained on the burial contract between plaintiffs and defendants Kell and Kell-Tondin Chapel, Inc., because plaintiffs failed to allege that the defendants "breached any contract to provide a funeral service". In so ruling, the trial judge relied on the case of *Rauhe v Langeland Memorial Chapel, Inc,* 44 Mich App 371; 205 NW2d 313 (1973). However, reliance on this case for the proposition asserted is misplaced since the Court in *Rauhe* specifically held that there was no contract between the parties involved. *Id.,* 374. In contrast, there is no dispute by the parties to the instant action that a valid contract for burial was entered into. The only question is whether the contract accorded plaintiffs any additional rights, or the defendants any additional duties, with respect to the treatment, custody or maintenance of the corpse of plaintiffs' daughter.

To this extent, Count III of plaintiffs' complaint alleged that defendants breached their contract by burying the dead body of their daughter in its mutilated state "without the knowledge, approval, permission or consent" of the plaintiffs. Defendants Kell and Kell-Tondin Chapel, Inc., denied the truth of this allegation, thus raising an issue of fact for the trier of fact. If the parties' burial contract did in fact contain a provision for the defendants to notify plaintiffs of the removal of body parts from the corpse, it is quite clear that defendants failed to perform this function since plaintiffs were not informed of the mutilation until nearly 40 days after the burial, and then only because the matter was brought out during a public hearing. Therefore, although any contrac-

tual liability for the actual mutilation of the corpse would be excused by reason of the county medical examiner's statutory authority to conduct the operation, defendants may be liable under an additional duty imposed by contract to timely notify the plaintiffs of any surgical procedure performed on the corpse. Accordingly, the trial judge erred in part in granting defendants' motions for summary judgment with respect to Count III of plaintiffs' complaint.

Affirmed in part and reversed in part. Remanded.

BRONSON, J. I agree with the majority that plaintiffs had standing to bring this suit, that the plaintiffs' injuries did not need to be contemporaneous with the wrong, and that summary judgment on the contract claim was improperly granted. I must respectfully dissent, however, from that portion of the majority's opinion which affirms the grant of summary judgment on the tort claims.

Although there are several statutes relating to the duties of law enforcement officials when a person has suffered a violent death, the crucial language in this case concerns the medical examiner and states:

"[S]uch examiner may retain, as long as may be necessary, any portion of such body *believed by him to be necessary* for the detection of any crime." MCL 52.205; MSA 5.953(5). (Emphasis added.)

The majority appears to read this statute as granting immunity from suit to a medical examiner when engaged in such activity. I do not read the statute as granting such an immunity. The statute allows the medical examiner to remove

and retain body parts when it is believed to be necessary for the detection of crime, but nowhere does it insulate him from a challenge to his authority to act in a particular case. It is clear, for example, that if a medical examiner removed and retained body parts when he did not believe it necessary, he would be acting without the authority granted by the statute and would be properly subject to suit. Furthermore, an action in tort could seek to challenge the reasonableness of the medical examiner's belief that his actions were necessary. While the statute grants the examiner a right, that right is capable of being abused. Potential abuse is not discouraged if only a bald assertion that the examiner believed his acts were necessary was sufficient to defeat a cause of action. The purpose of most tort actions is to challenge the reasonableness of the defendant's conduct. Accordingly, if plaintiffs could show at a trial that the deputy medical examiner did not believe it was necessary to remove the hands and hair, or if they could show that although he claims to have believed it was necessary such belief was unreasonable, they should recover.

On the facts of this case I believe the trial court erred in granting summary judgment for failure to state a claim. The plaintiffs alleged in Count IV of their complaint that Dr. Ayers acted without authority or right in removing the hands and hair from the body of their daughter. This was sufficient to state a claim. Although the statute grants a medical examiner the authority to undertake such actions *in certain circumstances,* further factual development could show that such circumstances did not exist. While Dr. Ayers averred in connection with his motion for summary judgment that he was at all relevant times acting in his

capacity as a deputy medical examiner, it was not established that he believed his actions were necessary or that such a belief was reasonable. Because it does not appear that the plaintiffs' claims in Count IV of their complaint were so clearly unenforceable as a matter of law that no factual development could justify a right to recover, I would reverse and remand for trial. *Koenig v Van Reken,* 89 Mich App 102; 279 NW2d 590 (1979).

As the majority affirms the grant of summary judgment in favor of the funeral home and its agent on the alleged immunity of the deputy medical examiner, I would reverse and remand for trial on Count I as well. Because it does not appear that the trial court has addressed the substance of Count II of plaintiffs' complaint, aside from the now reversed determination that there was no damage, I would allow the defendants to renew their motion for summary judgment as to Count II.

It is not my intention to address the likelihood of the plaintiffs recovering after a trial. The statute in question wisely accords the medical examiner wide latitude in his crime detection functions. On the basis of the present record, however, I believe summary judgment was inappropriate. I would reverse and remand for trial.

MacKenzie, P.J. I concur with Judge Allen in finding that the trial judge did not err in granting summary judgment in favor of defendants under Counts I, II, and IV of the plaintiffs' complaint. However, I disagree with Judge Allen's determination that the trial judge erred in granting summary judgment in favor of defendants Lenwood E. Kell and Kell-Tondin Chapel, Inc., with respect to Count III of plaintiffs' complaint.

Count III of plaintiffs' complaint alleges the defendants "had a duty by contract with your plaintiffs to provide a proper and decent burial of the body of plaintiffs' deceased daughter, Laura Lee Allinger Gardner". There is a further allegation of breach of the duty by failing to give a proper and decent burial "by allowing the corpse delivered to their custody to have its hands and hair severed and removed, and by allowing said corpse to be buried and interred in a grotesque and mutilated condition without the knowledge, approval, permission or consent of your plaintiffs".

The allegations as to express contractual provisions between plaintiffs and defendants Kell are in vague and general language. No written contract was attached to the complaint nor was any reference to a written contract included in the record. A motion for summary judgment on the basis of GCR 117.2(1) was filed by defendants Kell on December 18, 1978, and a hearing was held pursuant to notice on March 8, 1979. No responsive pleading was filed by plaintiffs to the summary judgment motion; nor was any request made at the hearing to amend the complaint to include a statement of the facts upon which plaintiffs rely for their allegations of contractual duty as required by GCR 111.1(1).

The trial court did not grant the motions for summary judgment to defendants until April 11, 1979, after proposed orders granting motions were served with notice of presentment of same.

Plaintiffs had the chance at the trial court level to amend the complaint to specifically plead the terms of the contract which allegedly created the duty plaintiffs claim was breached. However, even if the complaint had properly pled that the burial agreement specifically contained a promise by the

funeral director that it would prevent the medical examiner from removing the hands of the deceased for evidentiary purposes, such a provision would not have been enforceable. Private parties cannot contract to avoid actions by public officials specifically authorized by statute. Therefore, a breach of such a provision would not be actionable. I would affirm the trial court's holding that plaintiffs stated no cause of action upon which relief could be granted, either in tort or contract.

Judge BRONSON's opinion disregards what I see as legislative intent to give the medical examiner responsibility and wide discretion in investigating the cause and manner of death when death is caused by violence, MCL 52.202; MSA 5.953(2).

The authority of the medical examiner is to conduct autopsies without the consent of the next of kin and to retain such portions of the body as "believed by him necessary for the detection of any crime". MCL 52.205; MSA 5.953(5). The statute does not require that the medical examiner's belief that the removal and detention of body parts be reasonable, nor does his belief that such removal and detention was necessary for the detection of crime have to be correct. Clearly, the legislative purpose is to promote the public interest in detecting crime and obtaining evidence to convict criminals. The state's interest in law enforcement outweighs the rights the next of kin of a murdered person may have in keeping the dead body inviolate. In some cases of death from unnatural causes, the next of kin are the perpetrators of the crime and have the most to gain by curtailing investigation. The medical examiner is charged with a public duty, and, in the absence of specific pleading of facts showing that he was acting contrary to his statutory duties, he should be immune from suit.