*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW URBANOWICZ and TRICIA URBANOWICZ,

Plaintiffs-Appellants,

v

TRINITY HEALTH-MICHIGAN, doing business as ST. JOSEPH MERCY HOSPITAL, ANN ARBOR, and BELL-BOREK, INC., doing business as BOREK JENNINGS FUNERAL HOME AND CREMATION SERVICE, HAMBURG CHAPEL,

Defendants-Appellees.

UNPUBLISHED
October 28, 2021

No. 354970
Washtenaw Circuit Court
LC No. 18-001198-NO

Before: MURRAY, C.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

In this negligence action, plaintiffs appeal as of right the trial court's orders granting summary disposition to defendants. We affirm in part, reverse in part, and remand to the trial court for further proceedings.

## I. FACTS

This case concerns the stillborn birth of one of plaintiffs' children in defendant Trinity Health's Ann Arbor hospital.[1] Plaintiffs arranged to have the child cremated at one of defendant Bell-Borek's funeral homes. The funeral home sent an employee to the hospital to retrieve the human remains of the stillborn child for cremation. However, the funeral home retrieved, and cremated, the afterbirth material instead of the child's human remains. The ashes of that afterbirth material were presented to plaintiffs as being the ashes of their stillborn child. However, some days later, the hospital discovered that the child's human remains were still located in the morgue.

---

[1] The deceased child's sibling was born healthy.

The hospital notified plaintiffs, the funeral home retrieved the child's human remains for cremation, and the child's ashes were presented to plaintiffs.

Plaintiffs filed a complaint against defendants, alleging both negligent infliction of emotional distress and mishandling of a corpse. The hospital moved for summary disposition pursuant to MCR 2.116(C)(7), arguing that plaintiffs' complaint sounded in medical malpractice and that the applicable statutory period of limitations had already expired for a medical malpractice claim. The trial court agreed with the hospital and granted it summary disposition, ruling that a professional relationship existed between plaintiffs and the hospital, and that the actions taken by the hospital required specialized medical knowledge consistent with claims that sound in medical malpractice.

The funeral home then separately moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that the facts of the case were not sufficient to establish the elements of negligent infliction of emotional distress because plaintiffs had not demonstrated that they had objective and definite physical injuries arising from the emotional distress. The trial court agreed with the funeral home and granted it summary disposition, ruling that plaintiffs' emotional distress was not of the nature required for a claim for negligent infliction of emotional distress because plaintiffs failed to show resulting physical harm. This appeal followed.

II. DISCUSSION

A. MEDICAL MALPRACTICE

Plaintiffs argue that the trial court improperly granted summary disposition to the hospital pursuant to MCR 2.116(C)(7) because their claims against it did not sound in medical malpractice. We agree. "A trial court's decision on a motion for summary disposition is reviewed de novo." *Meemic Ins Co v Bischer*, 323 Mich App 153, 157; 915 NW2d 1 (2018) (citation omitted). "In determining whether the nature of a claim is ordinary negligence or medical malpractice, as well as whether such a claim is barred because of the statute of limitations, a court does so under MCR 2.116(C)(7)." *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 419; 684 NW2d 864 (2004). "When it grants a motion under MCR 2.116(C)(7), a trial court should examine all documentary evidence submitted by the parties, accept all well-pleaded allegations as true, and construe all evidence and pleadings in the light most favorable to the nonmoving party." *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015) (quotation marks and citation omitted).

When determining whether a claim sounds in ordinary negligence or medical malpractice, a reviewing court must determine "(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Bryant*, 471 Mich at 422. "If both of these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions." *Id*. "A professional relationship exists if a person or an entity capable of committing medical malpractice was subject to a contractual duty to render professional healthcare services to the plaintiff." *Kuznar v Raksha Corp*, 481 Mich 169, 177; 750 NW2d 121 (2008). The claim raises questions of medical judgment when "the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury [as] explained by experts."

*Bryant*, 471 Mich at 423. Moreover, "[t]he determination whether a claim will be held to the standards of proof and procedural requirements of a medical malpractice claim as opposed to an ordinary negligence claim depends on whether the facts allegedly raise issues that are within the common knowledge and experience of the jury." *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 45-46; 594 NW2d 455 (1999).

In this case, plaintiff Tricia gave birth at the hospital and there was a contractual duty for the hospital to render professional healthcare services to her as she gave birth. Therefore, the hospital shared a professional relationship with plaintiff Tricia. And the parties do not dispute that the hospital, doctors, and employees who were rendering care to plaintiff Tricia were capable of committing medical malpractice. However, the reasonableness of the hospital's actions in determining where and how to store plaintiffs' stillborn child and how to appropriately catalog whether the human remains were properly delivered to a third-party funeral home does not require medical knowledge or medical judgment. In other words, such storage and delivery policies do not require expert testimony. They are within the knowledge of any layperson who is familiar with administrative tasks.

The hospital argues that care for a stillborn child is not something that a layperson would know how to perform. However, plaintiffs are not claiming that the hospital's medical care was negligent, but rather that the hospital negligently cataloged and transferred the wrong human remains to the funeral home. Resolving these allegations does not require specialized medical knowledge that the jury would only be able to understand as explained by an expert. The hospital also argues that *Dorris* stands for the proposition that the adequacy of a hospital's policies and procedures are matters that fall within the purview of medical malpractice. In *Dorris*, our Supreme Court addressed whether the plaintiff's claim sounded in ordinary negligence when the defendant argued that the proper supervision and monitoring of patients were actions that required specialized medical knowledge consistent with a claim for medical malpractice. *Dorris*, 460 Mich at 43. The Court reasoned that "[t]he ordinary layman does not know the type of supervision or monitoring that is required for psychiatric patients in a psychiatric ward," and, therefore, the plaintiff's claim sounded in medical malpractice. *Id*. at 47. The hospital argues that this similarly follows for the supervision and monitoring of stillborn children. However, plaintiffs' issue in this case is not how the hospital monitored, supervised, or maintained the stillborn child, but how the hospital mistakenly delivered the wrong remains to a funeral home. Here, the issue is far simpler than those concerning supervision and monitoring of active, live patients who were involved in *Dorris*.

The facts before us demonstrate that the hospital's actions did not require specialized medical knowledge. Therefore, the trial court erred by determining that plaintiffs' claims against the hospital sounded in medical malpractice and by granting summary disposition to the hospital on that basis, see MCL 600.5805(8), and we accordingly reverse the trial court to that extent.

## B. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs argue that the trial court improperly granted summary disposition to the funeral home concerning their negligent infliction of emotional distress claims. We disagree. The trial court granted the funeral home's motion for summary disposition pursuant to MCR 2.116(C)(10), which provides that the trial court may grant summary disposition in favor of the moving party when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and

the moving party is entitled to judgment or partial judgment as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Ordinarily, negligent infliction of emotional distress is recognized "when a plaintiff witnesses negligent injury to a third party and suffers mental disturbance as a result." *Teadt v Lutheran Church Missouri Synod*, 237 Mich App 567, 581 n 6; 603 NW2d 816 (1999). Specifically, a plaintiff must establish that

> (1) the injury threatened or inflicted on the third person is a serious one, of a nature to cause severe mental disturbance to the plaintiff, (2) the shock results in actual physical harm, (3) the plaintiff is a member of the third person's immediate family, and (4) the plaintiff is present at the time of the accident or suffers shock "fairly contemporaneous" with the accident. [*Taylor v Kurapati*, 236 Mich App 315, 360; 600 NW2d 670 (1999) (citation omitted).]

Thus, it is not sufficient that some negligent action caused plaintiffs to suffer severe emotional distress. The claims for negligent infliction of emotional distress require that plaintiffs either be present at the time the negligent acts to an immediate family member occurs or suffer shock "fairly contemporaneous" with the negligent acts. In this case, plaintiffs' child already had deceased and his body was sent to the morgue in the hospital. Any alleged negligent acts, in which the child's remains were kept in the morgue instead of being delivered to the funeral home, resulting in the afterbirth material being delivered to plaintiffs, occurred outside the presence of plaintiffs. Additionally, plaintiffs have not demonstrated that they suffered severe emotional distress "fairly contemporaneous" with the negligent acts, given that they learned about the error several days after it occurred. Therefore, plaintiffs failed to establish a genuine issue of material fact as to the fourth element of negligent infliction of emotional distress.[2]

The trial court properly ruled that plaintiffs failed to meet their burden to sustain a claim for negligent infliction of emotional distress against the funeral home because there is no genuine issue of material fact, upon which reasonable minds might differ, that neither plaintiff actually witnessed the negligent acts or demonstrated that they suffered severe emotional distress contemporaneously with the negligent acts. We therefore affirm the trial court's dismissal of the negligent infliction of emotional distress claims.[3]

---

[2] We acknowledge that the funeral home primarily challenged the second element of negligent infliction of emotional distress in the trial court, but we conclude that plaintiffs more clearly failed to establish the fourth element.

[3] The hospital argues on appeal that if this Court ruled in favor of the funeral home on the issue of negligent infliction of emotional distress, it should similarly apply that ruling to the hospital itself under the law-of-the-case doctrine. Although that doctrine is inapt here because it only binds an appellate court on a subsequent appeal, see *Grace v Grace*, 253 Mich App 357, 362; 655 NW2d

## C. MISHANDLING OF A CORPSE

Plaintiffs argue that Michigan law recognizes a claim for emotional distress arising from the mishandling of a corpse without a showing of resulting physical harm as well, and that the trial court erred to the extent that it may have understood otherwise. We agree.[4]

"It seems to be settled by the great weight of authority that the unlawful and intentional mutilation of a dead body gives rise to a cause of action on behalf of the person or persons entitled to the possession, control, and burial of such body." *Deeg v City of Detroit*, 345 Mich 371, 375; 76 NW2d 16 (1956). "Recovery for the refusal of the right to bury or for mutilation of the body is rather based upon an infringement of a right than upon the notion that the property of plaintiff has been interfered with." *Id*. at 376 (quotation marks and citations omitted). See also *Doxtator v Chicago & WM Ry Co*, 120 Mich 596, 597; 79 NW 922 (1899) ("[I]t has been held in a number of well–considered American cases that the one whose duty it is to care for the body of the deceased is entitled to possession of the body, as it is when death comes, and that it is an actionable wrong for another to interfere with that right by withholding the body or mutilating it in any way."). More recently, this Court explained as follows:

> Under tort law, recovery for the intentional or negligent mutilation of a dead body is based upon infringement of the right of the plaintiffs to have the body delivered for burial and interred without mutilation, other than that present at the time of death. Where a person has the right to bury a body, interference with that right is generally actionable. The trial court properly recognized this theory as the basis for plaintiffs' claims under Counts I, II and IV. In addition, the trial judge properly recognized that the measure of damages for mutilating or otherwise improperly treating a corpse is to measure the mental anguish or humiliation suffered by the plaintiffs who have been denied the comfort of knowing that the

---

595 (2002), we agree with the hospital that plaintiffs' claims of negligent infliction of emotional distress against the hospital must fail for the same reasons that they fail against the funeral home.

[4] We acknowledge that plaintiffs' briefing in the trial court and on appeal is somewhat muddled with respect to this issue, sometimes suggesting that mishandling of a corpse is a unique type of a negligent infliction of emotional distress tort that does not require a showing of physical harm, and at other times suggesting that mishandling of a corpse is an independent tort. However, we conclude that plaintiffs have sufficiently preserved the argument that mishandling of a corpse is an independent tort, particularly in light of the fact that plaintiffs' July 27, 2020 motion for reconsideration in response to the grant of summary disposition in favor of the hospital argued "[t]hat Plaintiffs' claim for Interference with the Right of Burial, Count II of Complaint, is a common law action under both state and federal law," and the fact that plaintiffs argued at the August 27, 2020 hearing on the funeral home's motion for summary disposition that "count 2 of Plaintiff's [sic] complaint lays out a wrongful interference with the right of burial claim. Uh, I've been using it interchangeably with, uh, mishandling of a corpse." We also note that plaintiffs' brief on appeal extensively quotes three cases from foreign jurisdictions for the proposition that mishandling of a corpse is an independent tort that does not require a showing of physical harm.

deceased has been given a comfortable and dignified resting place. *Recovery for injuries produced by emotional distress caused by defendants' tortious behavior is available even without accompanying physical impact.* [*Allinger v Kell*, 102 Mich App 798, 808-809; 302 NW2d 576 (1981), rev'd in part on other grounds 411 Mich 1053 (1981) (internal citations omitted; emphasis added).]

Our Supreme Court has recognized similar principles as well in recent years. In *Dennis v Robbins Funeral Home*, 428 Mich 698; 411 NW2d 156 (1987), the defendant funeral home allegedly committed negligence in handling the decedent's remains. *Id*. at 700. The issue before the Court was whether a two-year or three-year period of limitations applied to the plaintiff's complaint. *Id*. The Court ruled that the three-year period of limitations under MCL 600.5805(8) applied to the complaint,[5] observing that the statute applied "to traditional and primarily common-law torts." *Id*. at 705-706. In a footnote to that sentence, the Court quoted the following rule from the Second Restatement of Torts: "One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body." *Id*. at 706 n 8, quoting Restatement (Second) of Torts § 868. *Dennis* thus both recognized the common-law tort of mishandling a corpse and indicated that the Second Restatement set forth an accurate summary of that tort in Michigan.

Further, while not cited by our Supreme Court, we note that comment *a* to § 868 provides that a showing of physical harm is not necessary for the purposes of the tort:

> One who is entitled to the disposition of the body of a deceased person has a cause of action in tort against one who intentionally, recklessly or negligently mistreats or improperly deals with the body, or prevents its proper burial or cremation. The technical basis of the cause of action is the interference with the exclusive right of control of the body, which frequently has been called by the courts a "property" or a "quasi-property" right. This does not, however, fit very well into the category of property, since the body ordinarily cannot be sold or transferred, has no utility and can be used only for the one purpose of interment or cremation. In practice the technical right has served as a mere peg upon which to hang damages for the mental distress inflicted upon the survivor; and in reality the cause of action has been exclusively one for the mental distress. . . . *There is no need to show physical consequences of the mental distress.* [Restatement (Second) of Torts § 868, comment *a* (emphasis added.)]

In light of these authorities, particularly our decision in *Allinger*, we conclude that plaintiffs are not required to show physical harm arising from the alleged emotional distress to the extent that plaintiffs raised claims for mishandling of a corpse. As *Allinger* explained, consistent with the Second Restatement of Torts, "[r]ecovery for injuries produced by emotional distress caused by [the tort] is available even without accompanying physical impact." *Allinger*, 102 Mich App at 809. In this regard, the tort of mishandling of a corpse is distinct from the tort of negligent infliction of emotional distress. Although both torts fundamentally seek damages for emotional

---

[5] MCL 600.5805 has since been amended several times.

distress, only the latter tort requires a showing of physical harm arising from that emotional distress. See *Taylor*, 236 Mich App at 360.

Therefore, on remand, the trial court should consider plaintiffs' mishandling of a corpse claims against the hospital without imposing a requirement that they show physical harm. However, we nonetheless affirm the trial court's dismissal of plaintiffs' mishandling of a corpse claims against the funeral home. As the trial court observed at the August 27, 2020 hearing, the funeral home merely "picked up the [afterbirth] material." It was not responsible for any mishandling or mistreatment of the stillborn child in any respect. Any alleged mishandling would arguably be the fault of the hospital alone. In other words, because plaintiffs' claims require them to show that a defendant withheld a corpse from them, see *Dennis*, 428 Mich at 706 n 8, and because plaintiffs did not show that the funeral home ever withheld the stillborn child from them, they failed to establish a genuine issue of material fact without respect to their mishandling of a corpse claims against the funeral home. See *West*, 469 Mich at 183.

### III. CONCLUSION

The trial court erred in ruling that plaintiffs' complaint against the hospital sounded in medical malpractice, and we reverse that part of the trial court's ruling. The trial court was ultimately correct, however, in dismissing the negligent infliction of emotional distress claims brought by plaintiffs against both defendants because plaintiffs failed to establish a genuine issue of material fact with regard to that tort. We therefore affirm the trial court's ruling to that extent. Accordingly, we affirm in part, reverse in part, and remand to the trial court for further proceedings concerning plaintiffs' mishandling of a corpse claims against the hospital. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Michael J. Riordan